HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division
JESUS A. OSETE
Deputy Assistant Attorney General
Civil Rights Division
ROBERT J. KEENAN (CA No. 151094)
Senior Counsel
Civil Rights Division
MATTHEW J. DONNELLY (IL No. 6281308)
AARON I. HENRICKS (FL No. 1032369)
Attorneys
    United States Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, D.C.  20530
    Telephone: (202) 616-2788
    E-Mail:    matthew.donnelly@usdoj.gov

BILAL A. ESSAYLI
United States Attorney
RICHARD M. PARK (CA No. 236173)
Chief, Civil Rights Section
Assistant United States Attorney
    United States Attorney's Office
    312 North Spring Street, Suite 1200
    Los Angeles, California  90012
    Telephone: (213) 894-3275
    E-Mail:    richard.park@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  8:25-cv-1485 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| CALIFORNIA INTERSCHOLASTIC FEDERATION; and CALIFORNIA DEPARTMENT OF EDUCATION, | |
| Defendants. | |

The United States of America brings this civil action pursuant to Title IX, 20 U.S.C. § 1681 *et seq.*, for declaratory, injunctive, and damages relief. The United States alleges on information and belief as follows:

## **INTRODUCTION**

1. Across the State of California, girls must compete against boys in various sports pursuant to policies enforced by the California Department of Education ("CDE") and the California Interscholastic Federation ("CIF"). These discriminatory policies and practices ignore undeniable biological differences between boys and girls, in favor of an amorphous "gender identity." The results of these illegal policies are stark: girls are displaced from podiums, denied awards, and miss out on critical visibility for college scholarships and recognition. In the words of the Governor of California, it is "deeply unfair" for girls to compete against boys.[1]

2. This discrimination is not only illegal and unfair but also demeaning, signaling to girls that their opportunities and achievements are secondary to accommodating boys. It erodes the integrity of girls' sports, diminishes their competitive experience, and undermines the very purpose of Title IX: to provide equal access to educational benefits, including interscholastic athletics. Despite warnings from the United States Department of Education, Defendants continue to require California schools to allow boys to compete against girls. The United States accordingly files this action to stop Defendants' illegal sex discrimination against female student athletes.

## **NATURE OF THE ALLEGATIONS**

3. The United States brings this action to enforce Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and the implementing regulations of the United States Department of Education, 34 C.F.R. Part 106.

---

[1] *Gavin Newsom calls trans sports participation 'deeply unfair,' breaking with Democrats*, NBC News, https://www.nbcnews.com/out-out-politics-and-policy/california-gov-gavin-newsom-breaks-democrats-trans-sports-participatio-rcna195165.

4.    Defendants' policies and actions are harming girls by denying girls the opportunity to compete in student sports on a level playing field in which they have the same opportunities as boys.  Defendants' athletics policies and practices unfairly force girls to compete against boys in competitions designated for girls.  These policies and actions discriminate based on sex and harm female student athletes under Defendants' educational charge.

5.    Not only do Defendants' policies and actions eviscerate equal athletic opportunities for girls but they also require girls to share intimate spaces, such as locker rooms, with boys, causing a hostile educational environment that denies girls educational opportunities.

6.    Title IX's core purpose is to ensure that both boys and girls have equal educational opportunities.  This includes ensuring both sexes have an "equal athletic opportunity" to participate in school athletic programs.  *See* 34 C.F.R. § 106.41(c).

7.    The inherent physiological differences between the two sexes generally make them not similarly situated in athletics.  These physiological differences exist regardless of a person's subjective "gender identity."

8.    Because of these physiological differences, providing athletic teams, competitions, events, and intimate spaces for girls has long ensured that female student athletes are afforded an equal, and equally safe, opportunity to participate and effectively compete, and thereby to enjoy the same educational benefits from sports as boys.

9.    Defendants continue to violate federal law.  Despite Title IX's equal-opportunity mandate, Defendants have adopted and implemented policies that force girls to compete against boys—despite the real physiological differences between the sexes—if the boy asserts that he is a girl.  And despite Title IX's mandate, Defendants have adopted and implemented policies that allow boys to invade sensitive female-only spaces, endangering girls' privacy, dignity, and safety and causing a hostile educational environment that denies girls educational opportunities.

10.     Defendants' adopted and implemented policies intentionally deny and have the effect of denying girls equal educational opportunities, including athletics.

11.     The United States accordingly seeks a judgment granting declaratory, injunctive, and damages relief for Defendants' violations of Title IX and the federal funding contracts Defendants entered into promising to comply with Title IX and its implementing regulations.

## PARTIES

12.     Plaintiff is the United States of America.

13.     Defendant California Interscholastic Federation ("CIF") is a statewide, voluntary non-profit association, made up of 1,615 public, public charter, and private high schools that are aligned into 10 geographical sections for the purpose of governing education-based athletics in Grades 9 through 12.  CIF oversees 1.8 million students and over 750,000 student-athletes.

14.     CIF is governed by a Federated Council, which consists of school and district representatives elected from the 10 geographic sections and representatives from various California associations, including the California School Boards Association; Association of California School Administrators; California Association for Health, Physical Education, Recreation and Dance; California Coaches Association; California Association of Private School Organizations; and the California Association of Directors of Activities.

15.     Defendant California Department of Education ("CDE") is a current and past recipient of federal funding.  CDE distributes that federal funding to public and private local schools, including to schools participating in interscholastic athletics within the Central District of California.

16.     Defendant CDE, under the California Education Code, has authority over the interscholastic athletic policies of Defendant CIF and local school districts.  Cal. Educ. Code § 33354(a)(1).

17.     California law sets goals and expectations for Defendant CIF, including implementation of policies in consultation with Defendant CDE, and requires CIF to report to the state legislature and governor on CIF's evaluation and accountability activities and goals and objectives.  Cal. Educ. Code § 33353.

## JURISDICTION AND VENUE

18.     The United States brings this action to enforce Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, because this action arises under federal law and the United States is the Plaintiff.

20.     The United States is authorized to initiate this action under Title IX, 20 U.S.C. § 1682.

21.     Declaratory and injunctive relief is sought as authorized by 28 U.S.C. §§ 2201 and 2202.

22.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because Defendant CIF resides in the Central District of California, and a substantial part of the events or omissions giving rise to the United States' claims occurred in this judicial district.  Moreover, venue is also proper in the Southern Division of this judicial district because Defendant CIF's Southern Section Office is located in Orange County in Los Alamitos, California, and Student 2 (*see* ¶¶ 72-76 *infra*) participated in and won multiple events at competitions taking place in Orange County.

## FACTUAL ALLEGATIONS

### I.    Title IX Implementing Regulations

23.     Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681.

24. The regulations of the United States Department of Education ("USDOE") implementing Title IX ("Implementing Regulations") are codified at 34 C.F.R. §§ 106.1-106.82.

25. The Implementing Regulations provide that "no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient which receives Federal financial assistance." 34 C.F.R. § 106.31(a).

26. Title IX and the Implementing Regulations use the term "sex" to mean biological sex; the term "sex" thus does not mean "gender identity."

27. Consistent with "sex" meaning biological sex in Title IX, the President of the United States issued on January 20, 2025, Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," and issued on February 5, 2025, Executive Order 14201, "Keeping Men Out of Women's Sports," both of which reaffirm the ordinary meaning of the term "sex" in Title IX:

> (a) "Sex" shall refer to an individual's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include the concept of "gender identity."
>
> (b) "Women" or "woman" and "girls" or "girl" shall mean adult and juvenile human females, respectively.
>
> (c) "Men" or "man" and "boys" or "boy" shall mean adult and juvenile human males, respectively.
>
> (d) "Female" means a person belonging, at conception, to the sex that produces the large reproductive cell.
>
> (e) "Male" means a person belonging, at conception, to the sex that produces the small reproductive cell.
> . . .
> (g) "Gender identity" reflects a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex.

28.     The Implementing Regulations include a regulation specifically explaining Title IX's application to athletics ("Athletics Regulation").  34 C.F.R. § 106.41.

29.     The Athletics Regulation first declares a general prohibition on the use of sex in athletics, providing that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis."  34 C.F.R. § 106.41(a).

30.     However, due to the physical advantages males generally have over females, the Athletics Regulation permits recipients to separate athletic teams by sex: "[A] recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport."  34 C.F.R. § 106.41(b).

31.     Because such separation cannot disadvantage either sex, the Athletics Regulation requires that if an educational program separates teams by sex, the teams that the program designates as female teams must be completely separated by sex.  *See* 34 C.F.R. § 106.41(b).

32.     According to the Athletics Regulation, when a recipient provides sex-separated athletic teams, the teams must remain separated by sex with only one clearly defined limited exception: "[W]here a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport."  34 C.F.R. § 106.41(b).

33.     The Athletics Regulation also provides that "[a] recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics shall provide equal athletic opportunity for members of both sexes."  34 C.F.R. § 106.41(c).

34.    The Implementing Regulations provide that funding recipients must comply with the Implementing Regulations regardless of "any State or local law . . . rule or regulation of any organization, club, athletic or other league, or association which would render . . . student ineligible to participate or limit the eligibility or participation of any . . . student, on the basis of sex, in any education program or activity operated by a recipient and which receives Federal financial assistance."  34 C.F.R. § 106.6(b)-(c).

## II.    CDE's Control Over CIF and High School Sports

35.    CDE has control over and is responsible for CIF and its administration of high school sports.

36.    CDE is currently, and has been for many years, a recipient of federal financial assistance from various federal agencies, including the USDOE.

37.    USDOE's current allocation of funds to CDE for fiscal year 2025 totals approximately $44.3 billion, of which approximately $3.8 billion remains available for drawdown by CDE, including both discretionary grants and formula grants.

38.    As a condition of receiving USDOE funding, CDE has submitted to the USDOE a Grant Certification dated November 20, 2024, applicable to all federal funding.  That Certification states in part:  "As the duly authorized representative of the Department of Education California, I certify that Department of Education California: Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and public policies governing financial assistance awards and any Federal financial assistance project covered by this certification document, including but not limited to: . . . Title IX of the Education Amendments of 1972, as amended 20 U.S.C. § 1681 *et seq.*"

39.    The CDE is administered through the State Board of Education ("CBOE"), which is the governing and policy-determining body of the CDE and operates under the direction of the Superintendent of Public Instruction.  Cal. Educ. Code §§ 33300-33303.

8

40.    Under the California Education Code, Defendant CDE has authority over interscholastic athletic policies of Defendant CIF and local school districts.  Cal. Educ. Code § 33354(a)(1).

41.    If CDE determines that a school district or CIF is not in compliance with federal law, CDE can require the school district or CIF to adjust its policies to bring them into compliance.  Cal. Educ. Code §§ 33354(a)(2)(A) and (a)(3).

42.    CDE also has the authority to investigate discrimination complaints made against CIF and to commence legal proceedings against CIF to enforce compliance with the law.  Cal. Educ. Code § 33354(a)(3).

43.    CDE issues guidance to CIF on its obligations, and CIF has actively sought guidance and clarification from CDE.

44.    Under the Implementing Regulations, CDE is required to comply with Title IX, the Implementing Regulations, and ensure equal athletic opportunities regardless of "any State or local law . . . rule or regulation of any organization, club, athletic or other league, or association."  34 C.F.R. § 106.6(b)-(c).

III.    **Defendants' Discrimination Against Girls In Interscholastic Athletics**

A.    **CDE and CIF's Discriminatory Policies**

45.    CDE and CIF currently have policies that violate Title IX.  These policies discriminate against girls in interscholastic athletics by mandating that schools allow some boys to compete in girls' sports, which denies girls equal educational opportunities.  These policies also force girls to share intimate spaces, such as locker rooms, with boys, causing a hostile and unsafe educational environment that denies girls educational opportunities.

46.    CDE currently has posted on its website guidance entitled "Gender Equity/Title IX," which states in part: "The laws found in the California Education Code 221.5-231.5 are collectively known as the Sex Equity in Education Act.  These laws expand upon gender equity and Title IX laws which provide guidance to California's

education system.  Each Local Educational Agency (LEA) will be responsible for following the laws in addition to Title IX requirements."[2]

47.     The California Sex Equity in Education Act, Cal. Educ. Code § 221.5(f), referenced in the CDE's "Gender Equity/Title IX" guidance, states in part:  "A pupil shall be permitted to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with his or her gender identity, irrespective of the gender listed on the pupil's records."  Cal. Educ. Code § 221.5.

48.     The California Education Code defines "interscholastic activities" as "those policies, programs, and activities that are formulated or executed in conjunction with, or in contemplation of, athletic contests between two or more schools."  Cal. Educ. Code. § 35179.

49.     On August 5, 2024, CDE published and circulated guidance to County and District Superintendents and Charter School Administrators titled, "Ensuring That Students Are Protected from Discrimination Based on Gender Identity, Gender Expression, and Sexual Orientation."[3]  The guidance states, in part: "Under California law, 'gender' means sex, and includes a person's gender identity and gender expression; 'gender expression' means a person's gender-related appearance and behavior whether or not it is stereotypically associated with the person's assigned sex at birth . . . California state law specifically provides that students shall be permitted to participate in programs and activities and use facilities that are consistent with their gender identity."

50.     On March 11, 2025, Dr. Ronald W. Nocetti, Executive Director of CIF, sent a letter addressed to the Honorable Tony Thurmond, State Superintendent of Public

---

[2]  CDE, *Gender Equity/Title IX*, https://www.cde.ca.gov/re/di/eo/genequitytitleix.asp

[3]  *Ensuring That Students Are Protected from Discrimination Based on Gender Identity, Gender Expression, and Sexual Orientation*, August 5, 2024, https://www.cde.ca.gov/ci/pl/ensurestudentsprotected.asp

Instruction, CDE, which requested clarification and direction on CIF's policy on "gender identity" in interscholastic athletics.  The letter reads, in part, as follows:

> The California Interscholastic Federation ("CIF") and its member schools are in need of immediate clarification and direction from the Office of the Superintendent of Public Instruction regarding the obligation of the CIF and its members schools under California's anti-discrimination laws to continue permitting transgender students to compete on interscholastic athletic teams consistent with their gender identity given the issuance of President Donald Trump's Executive Order 14201, "Keeping Men Out Of Women's Sports" ("Executive Order 14201") issued on February 5, 2025, which bars female transgender students from competing on athletic teams that correspond with their gender identity. . .
>
> . . . the CIF appreciates your January 31, 2025 prompt response to the issuance of Executive Order 14168 affirming the California Department of Education's ("CDE") commitment to continue to provide safeguards against discrimination and harassment based on gender, gender expression, gender identity, and sexual orientation for California's students.
>
> . . .
>
> The urgency for clarification and guidance from the Office of the Superintendent of Public Instruction has been exacerbated due to public comments made by Governor Gavin Newsom on March 6, 2025, related to the participation of transgender student athletes on interscholastic teams that correspond to their gender identity. . .
>
> Governor Newsom's comments have increased the level of confusion and concern of the CIF and our member schools with respect to high school student athletes' ability to compete on interscholastic athletic teams that correspond to their gender identity. . .
>
> Since 2014, in compliance with state law, the CIF has allowed transgender students to compete on interscholastic athletic teams corresponding to their gender identity. The CIF has not wavered in its commitment to foster an inclusive athletic environment by complying with California's antidiscrimination laws which protect transgender students. But, at this moment in time, the CIF finds that it is imperative that it receive immediate and clear direction from your office.
>
> To ensure that the CIF and its member schools continue to comply with California law, we respectfully request immediate clarification and direction from the office of

the Superintendent of Public Instruction as to whether the CIF and its member schools are bound by California's ant- [sic] California's laws permitting transgender students to participate on interscholastic athletics teams consistent with their gender identity.

51.    On March 17, 2025, the CDE responded to CIF and wrote that CIF should continue to comply with California Education Code § 221.5(f).  More specifically, CDE Superintendent Thurmond advised CIF Executive Director Nocetti as follows:

I am responding to your letter sent on March 11, 2025, that sought guidance.   We appreciate the California Interscholastic Federation's (CIF) ongoing compliance with California Education Code Section 221.5(f), which states that "a pupil shall be permitted to participate in sex-segregated school programs . . . including athletic teams and competitions . . . consistent with his or her gender identity, irrespective of the gender listed on the pupil's records."    CIF should continue to comply.   Going forward, we appreciate your continuing efforts to protect transgender student-athletes from discrimination and harassment.

52.    CIF Bylaw 300.D specifically requires that California public high schools participating in interscholastic athletic activities must allow males to participate in girls' interscholastic athletics:  "All students should have the opportunity to participate in CIF activities in a manner that is consistent with their gender identity, irrespective of the gender listed on a student's records."[4]

53.    CIF currently posts on its website "Guidelines for Gender Identity Participation," which were initially adopted in 2013.[5]  The CIF "Guidelines for Gender Identity Participation" state:

All students should have the opportunity to participate in CIF activities in a manner that is consistent with their gender identity, irrespective of the gender listed on a student's records. The student and/or the student's school may seek review of the student's eligibility for participation in interscholastic athletics in a gender that

---

[4]  CIF Constitution and Bylaws and State Championship Regulations 2024-25, https://www.cifstate.org/governance/constitution/300_Series.pdf

[5]  Guidelines for Gender Identity Participation, https://www.cifstate.org/governance/constitution/Guidelines_for_Gender_Identity_Participation.pdf

does not match the gender assigned to him or her at birth, via the following procedure below should either the student or the school have questions or need guidance in making the determination. Once the student has been granted eligibility to participate in interscholastic athletics consistent with his/her gender identity, the eligibility is granted for the duration of the student's participation and does not need to be renewed every sports season or school year. All discussion and documentation will be kept confidential, and the proceedings will be sealed unless the student and family make a specific request.

NOTICE TO THE SCHOOL: The student and/or parents shall contact the school administrator or athletic director indicating that the student has a consistent gender identity different than the gender listed on the student's school registration records, and that the student desires to participate in activities in a manner consistent with his/her gender identity.

54. CDE's and CIF's policies also require girls to share intimate spaces, such as locker rooms, with boys, causing a hostile and unsafe educational environment that denies girls equal educational opportunities.

55. CIF published a "Gender Diverse Youth Sport Inclusivity Toolkit."[6] CIF describes this document as a "resource guide for inclusive transgender and nonbinary youth sport best practices." Among definitions and other guidance, the "Toolkit" describes how "trans" or "other gender" students should be treated with respect to restrooms and locker rooms:

Transgender athletes, as a general rule, will opt for either the boys' room (for trans boys) or the girls' room (for trans girls). Nonbinary-identified and other gender diverse youth are also in the position of selecting the specific gender-separated facility that works best for them. There are different considerations that may be present that will influence any student's choice. Safety and privacy needs top the list. Some athletes may request an all-gender facility, some may use a particular gender separated room but request a slightly different changing schedule to accommodate their desire for greater privacy. Some may seek a private changing area

---

[6] Gender Diverse Youth Sport Inclusivity Toolkit, https://www.cifstate.org/coaches-admin/CA_Gender_Diversity_Toolkit.pdf.

within a particular locker room.  These requests can easily be accommodated.

**B.    Defendants' Acknowledge Their Discriminatory Policies at the 2025 Track and Field Championships**

56.    In May 2025, Defendants acknowledged the harmful effects of their discriminatory policies on girls' athletic educational opportunities at the 2025 Track and Field Championships.

57.    To qualify for the CIF State Track and Field Championships, an athlete must either be one of their CIF Section limited entries or qualify under the "At-Large" standard for their event.  The "At-Large" standards are different for boys and girls, with the boys' standards being higher.[7]  At the May 2025 CIF State Track and Field Championships, a male competed against girls in the girls' high jump, triple jump, and long jump.

58.    A few days before the championship meet, on May 27 and 28, 2025, CIF implemented a pilot entry process, by which "a biological female student-athlete who would have earned the next qualifying mark will also be advanced to the finals."

59.    The CIF also announced that "if necessary, in the high jump, triple jump and long jump events at the 2025 CIF State Track and Field Championships, a biological female student-athlete who would have earned a specific placement on the podium will also be awarded the medal for that place and the results will be reflected in the recording of the event."

60.    CIF, through the pilot entry process and its references to "biological female," has acknowledged the inherent athletic advantage males have over "biological female[s]" and that allowing males to compete in female athletic competitions displaces girls and denies girls equal athletic opportunities.

---

[7]  2025 State Track and Field Handbook. https://www.cifstate.org/sports/track_and_field/2025_State_Track_and_Field_Handbook.pdf.

61.     As detailed below, on Saturday, May 31, 2025, Student 1, a boy, competed in the girls' 2025 CIF State Track and Field Championships and placed first in the girls' triple jump, first in the girls' high jump, and second in the girls' long jump.

62.     Currently, on the CIF website, the results page for the 2025 Track and Field Championship lists Student 1 in first place in the girls' high jump, first place in the girls' triple jump, and second place in the girls' long jump.[8]

63.     The pilot entry process fails to remedy Defendants' past discrimination and fails to prevent Defendants' future discrimination against female athletes and their equal educational opportunities.

64.     More generally, Defendants acknowledge the inherent physical advantages that males have over female athletes by using different equipment (*e.g.*, hurdle heights), and standards (*e.g.*, race distance) in sports designated for males.

C.      **Examples of Defendants' Discrimination and its Harmful Effects**

1.      **Student 1's Displacement of Girl Athletes**

65.     Student 1 is a male student athlete who is and has been competing against female athletes in numerous CIF girls' track and field events from 2022 to the present with the Jurupa Unified School District.  In all track & field events, Student 1 competed against all girls on the school's girls track & field team, even though there was a boys' track & field team in which Student 1 could have competed.

66.     On February 8, 2025, Student 1 competed in the girls' California Winter State Track & Field Championships outdoor triple jump, finishing in first place and displacing the girls who competed.  Student 1's distance would have placed 23rd had he competed against male athletes at that event.  Student 1 also competed against the girls in the long jump at that same meet and placed third.  Student 1's long jump distance was 6.25 inches shorter than the 28th place finisher in the boys' long jump finals at that event.

---

[8]      2025 CIF Track and Field Championship Results, https://www.cifstate.org/sports/track_and_field/past_results_records/2025_Results.pdf.

67.    On February 22, 2025, Student 1 competed against the girls at the Ontario relays and set the Division 3 girls' triple jump meet record with a 40-foot triple jump, which was more than 8 feet longer than the second-place finisher, who was female. Student 1 also won the girls' long jump and high jump events at that meet.

68.    On May 17, 2025, Student 1 competed against the girls in the outdoor triple jump and outdoor long jump in the CIF-SS Finals, placing first in both events and displacing girls who he competed against. Had Student 1 competed against the boys at that meet, his distances would have placed 9th in the triple jump, and he would have failed to make a recognized placement in the long jump. These wins qualified him for the CIF-SS Masters Meet on May 24, 2025.

69.    Student 1 competed against the girls in the CIF-SS Masters Meet on May 24, 2025, where he won the outdoor triple jump and outdoor long jump, and he tied for fourth in the high jump. Had Student 1 competed against the boys at that meet, his distances would have placed him behind all other competitors in all three events. His triple jump distance was nearly three feet shorter than the last-place boys' competitor, his long jump distance was almost two feet shorter than the last-place boys' competitor, and his high jump level was 10 inches lower than the last-place boys' competitor.

70.    On May 31, 2025, Student 1 competed against the girls in the 105th California State Track & Field Championships. Student 1 placed first in the triple jump, tied for first in the high jump, and took second in the long jump. Had Student 1 competed in the boys' competition at that meet, his distances would have finished last in all three events, and he would not have even qualified to compete in the finals had he competed against the boys in the May 31, 2025, preliminaries.

71.    Of the approximately 16 CIF meets in which Student 1 competed against girls during the 2024-2025 outdoor track and field season, he took home at least 36 first-place victories or gold medals.

## 2.    <u>Student 2's Displacement of Girl Athletes</u>

72.    Student 2 is a male student athlete competing against female athletes in numerous CIF track and field and cross-country events in California from 2023 to the present with the Riverside Unified School District.  In all track & field events, Student 2 competed against all girls on the school's girls track & field and cross-country teams, even though there were boys' track & field and cross-country teams Student 2 could have competed on.

73.    In September 2023, Student 2 ran in the 2023 Cool Breeze Invitational and competed against the girls in the large-school sophomore girls' three-mile-run finals and finished first.  Had he competed against the boys in that event, his time would have put him in 115th place.

74.    On August 3, 2024, Student 2 competed at the Lion's Den Classic against the girls in the 5,000-meter varsity run and finished first with a time of 18:32.  Student 2's time was almost two minutes faster than the second-place finisher, who was a girl.  Had Student 2 competed against the boys in that event, his time would have put him in 13th place.

75.    On April 9, 2024, Student 2 competed in the ML King vs. Norco 2025 meet against the girls in the 100-meter hurdles and the 300-meter hurdles.  Student 2 finished in first place in the finals in both events.  Had Student 2 competed against the boys in similar events (note the girls' hurdles were 33 inches and the distance was 100 meters, whereas the boys hurdles were 39 inches and the distance was 110 meters), Student 2's time would have finished almost three seconds slower than the last-place boys' finisher in the 110-meter hurdles and more than 4.5 seconds slower than the second-place boys' finisher in the 300-meter hurdles.

76.    On April 29, 2025, Student 2 competed in the BIG VIII League Championships.  Student 2 competed against the girls in the 100-meter hurdles and placed first.  Student 2 also competed against the girls in the 300-meter hurdles and placed second.  Had Student 2 competed against the boys in similar events (note the

girls' hurdles were 33 inches high and the distance was 100 meters, whereas the boys' hurdles were 39 inches high and the distance was 110 meters), his time in the 100-meter hurdles would have placed him in fifth place in the boys' 110-meter hurdles and last in the boys' 300-meter hurdles.

### 3. Student 3's Displacement of Girl Athletes

77. Student 3 is a male student athlete competing against female athletes in numerous track and field events in California from 2023 to the present with the Lucia Mar Unified School District. In all track & field events, Student 3 competed against all girls on the school's girls' track & field team, even though there was a boys' track & field team competing in boys' track and field.

78. Student 3 recently competed in the Division 1 CIF Central Section in the girls' 100-meter, 200-meter, 400-meter, long jump, and relays.

79. On April 9, 2025, Student 3 competed at the Central Coast Athletic Association (CCAA) Mountain Tri-Meet between San Luis Obispo, Arroyo Grande, and Nipomo. Student 3 competed against the girls in the junior varsity 400 meter, placing second, and competed against the girls in the varsity long jump placing fourth.

80. On May 2, 2025, Student 3 competed at the CCAA Mountain League Championships against the girls in the junior varsity long jump and placed fourth.

### 4. Student 4's Displacement of Girl Athletes

81. Student 4 is a male student athlete competing against all female athletes in volleyball, basketball, and soccer in California since 2021. Student 4 is enrolled in a private school and has been competing in the Division 6 CIF North Coast Section (NCS). In all events Student 4 competed against girls, there was a boys team on which Student 4 could have competed.

82. Student 4 helped his team win the NCS Division 6 girls' volleyball championship in 2022 and 2024. Student 4 also helped his team win runner-up at the 2024 CIF State Girls volleyball championships.

83.    In basketball, Student 4 competed against the girls and was ranked fifth in total scoring in the NCS during the 2024-2025 season.  On two occasions, Student 4 scored more points in a single game than the entire opposing team.  On January 16, 2025, Student 4 scored 28 points, 8 more than the opposing team's final score of 20.  On January 28, 2025, Student 4 scored 28 points again, which was 3 more points than the opposing team's final score.

84.    During the 2023-2024 basketball season, Student 4 helped the girls' basketball team win the NCS Division 6 Basketball championship and helped the girls' team earn a four-seed in the state CIF tournament.

### 5.    Student 5's Displacement of Girl Athletes

85.    Student 5 is a male student athlete competing against female athletes in California from 2022 to the present with the Cabrillo Unified School District.  Student 5 competes against all girls in volleyball in the Division 4 CIF Central Coast Section.  Student 5 helped his team win the Peninsula Athletic League volleyball championship in 2024.

### D.    Defendants' Hostile and Unsafe Athletic Environments

86.    CDE's and CIF's policies also require girls to share intimate spaces, such as locker rooms, with boys, causing a hostile and unsafe educational environment that denies girls' educational access and opportunities.

87.    Because of the privacy interests that arise from the physical differences between the sexes, throughout history it has been universally accepted that open public restrooms, locker rooms, and shower facilities that are designed to be used by multiple people at a time should be separated on the basis of sex.  *Cf. United States v. Virginia*, 518 U.S. 515, 550 n.19 (1996) ("Admitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements, and to adjust aspects of the physical training programs.").

88.    By denying female student athletes sex-separated intimate facilities, Defendants substantially increase the risk of sexual harassment, assault, and voyeurism in girls' locker rooms and bathrooms.

89.    For example, on April 15, 2025, a high school track student athlete spoke during public comment at a meeting of the Lucia Mar School District Board of Education in Arroyo Grande, California.  The student recounted how she had recently gone into the girls' locker room at school to dress for track practice.  While she was changing her clothes, a male student was sitting in the locker room watching her and the other female students undress.  The student said the experience was traumatizing.  The student stated the male student had already dressed for track practice at the beginning of the day.  The male student had no reason to be in a locker room other than to watch the girls undress.

### E.    Defendants' Failure to Accommodate Girls' Interests and Retaliation Against Girls Expressing Opposition to Defendants' Policies

90.    Defendants have failed to accommodate girl student athletes' interests in equal educational opportunities.

91.    Girl athletes and their families have an interest, and have expressed this interest to Defendants and to schools, in female-only sports teams and competitions that fairly accommodate their interests and abilities.

92.    Girl athletes and their families have an interest, and have expressed this interest to Defendants and to schools, in revoking or ending enforcement of Defendants' discriminatory policies, which decrease the quality of their competitive opportunities.

93.    Defendants' discriminatory policies, practices, and failure to listen to student athletes' interests make it impossible for girls' educational athletic interests and abilities to be fully and effectively accommodated.

94.    Defendants' discriminatory policies and practices deny girls the equal athletic benefit of public visibility and recognition of athletic competition and

accomplishment and the increased opportunity for college athletic recruiting and scholarships.

95.    Defendants' discriminatory policies and practices cause girls to have materially fewer athletic opportunities than they previously enjoyed because they no longer can compete in fair, exclusively female competition.

96.    Defendants have also engaged in retaliation against girl student athletes who objected to the inclusion of males in their spaces.

97.    For example, in November 2024, two athletes at Martin Luther King High School in Riverside California wore T-shirts with the messages: "Save Girls' Sports" and "It's Common Sense. XX ≠ XY."  The shirts were a reaction to the school displacing a girl from the girls' cross-country team for a boy.  School officials required the girls to remove or cover their shirts and told them that wearing the shirts was like "wearing a swastika in front of Jewish students."  The female student was removed from her position on the girls' varsity cross-country team to make room for a male athlete who did not consistently attend practices and failed to satisfy many of the team's varsity eligibility requirements.

## IV.    <u>U.S. Department of Education Investigation</u>

98.    On February 12, 2025, the USDOE notified CIF that it was commencing a Title IX investigation into its provision of student athletics.

99.    On April 4, 2025, the USDOE notified CDE that it was commencing a Title IX investigation into its provision of student athletics.

100.    On June 25, 2025, the USDOE informed Defendants of the outcome of its investigation and notified them of its conclusion that Defendants are noncompliant with Title IX and its implementing regulations.  As part of this notice, the USDOE attached a voluntary resolution agreement that put forth the corrective measures necessary for Defendants to come into voluntary compliance with Title IX.

101.    The June 25, 2025, USDOE Letter informed Defendants that they had "10 calendar days to sign a resolution agreement" or the USDOE may initiate an

enforcement action, "including the initiation of administrative action suspending, terminating, or refusing to grant or continue financial assistance, and other means authorized by law, such as referral to the U.S. Department of Justice."

102.    On July 7, 2025, Defendants notified the USDOE that Defendants would not enter into a resolution agreement to voluntarily comply with Title IX.

103.    The USDOE made concerted efforts to bring Defendants into compliance with Title IX.  The USDOE subsequently determined that Defendants' compliance could not be achieved by voluntary means.

104.    On July 7, 2025, after Defendants confirmed they would not voluntarily comply with Title IX, the USDOE referred its findings of Defendants' Title IX violations to the United States Department of Justice for enforcement.

105.    The United States has satisfied all prerequisites to filing this lawsuit.

## <u>COUNT I</u>

### (Violation of Title IX, 20 U.S.C. § 1681 *et seq.*,)

106.    The United States realleges and incorporates by reference the allegations set forth in all the above paragraphs numbered 1-105.

107.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

108.    Defendants are required to comply with Title IX and its Implementing Regulations.

109.    Based on all the foregoing, Defendants have violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and its Implementing Regulations.

110.    Defendants' Title IX violations harm, and continue to harm, student athletes.

111.    Unless enjoined by this Court, Defendants will continue to violate Title IX.

22

## COUNT II

### (Violation of Title IX Contractual Assurances)

112.    The United States realleges and incorporates by reference the allegations set forth in all the above paragraphs numbered 1-111.

113.    Defendant CDE has expressly agreed to comply with Title IX and its Implementing Regulations and to ensure all parties with whom it arranges to provide services or benefits also comply, as a condition of receiving federal financial assistance by entering into contractual assurance agreements with the United States.

114.    Defendant CDE's Title IX violations are material breaches of its contractual assurance agreements.

115.    The United States has suffered damages from Defendant CDE's breach of its contractual assurance agreements.

116.    Unless enjoined by this Court, Defendant CDE will continue to materially breach its contractual assurance agreements with the United States.

### PRAYER FOR RELIEF

117.    WHEREFORE, the United States hereby prays that the Court grant the following relief:

a.    A declaratory judgment that Defendants' policies, practices, and actions violate Title IX and Defendant CDE's Title IX contractual assurances;

b.    A permanent injunction prohibiting Defendants, and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Defendants, from further violating Title IX and Defendant CDE's Title IX contractual assurances;

c.    A permanent injunction ordering Defendants to:

(1)    Issue directives to all California CIF member schools prohibiting the participation of males in athletic competitions designated for females;

(2)    Implement a monitoring and enforcement system to ensure compliance with Title IX's requirement of equal athletic opportunity;

(3)    Establish a process to compensate female athletes who have been denied equal athletic opportunities due to Defendants' violations, including correcting past athletics records; and

(4)    Submit regular compliance reports to the Court and the United States for a period of no less than five years;

d.    An award of damages to the United States;

e.    An award of any applicable costs and fees; and

f.    An award of all such additional relief as the interests of justice may require.

## **JURY DEMAND**

The United States hereby requests trial by jury on all eligible claims.

DATED: July 9, 2025.

BILAL A. ESSAYLI
United States Attorney

*/s/ Richard M. Park*
_____
RICHARD M. PARK
Chief, Civil Rights Section
United States Attorney's Office

Respectfully submitted:

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Deputy Assistant Attorney General
Civil Rights Division

*/s/ Robert J. Keenan*
_____
ROBERT J. KEENAN
Senior Counsel
Civil Rights Division

MATTHEW J. DONNELLY
Attorney
AARON I. HENRICKS
Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA