1  ROB BONTA
   Attorney General of California
2  DARRELL W. SPENCE (SBN 248011)
   Supervising Deputy Attorney General
3  JONATHAN BENNER (SBN 318956)
   STACEY LEASK (SBN 233281)
4  ANTHONY PINGGERA (SBN 320206)
   EDWARD NUGENT (SBN 330479)
5  Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102-7004
     Telephone:  (415) 229-0113
7    Fax:  (415) 703-5843
     E-mail:  Edward.Nugent@doj.ca.gov
8  *Attorneys for Defendant California*
   *Department of Education*
9
   J. SCOTT DONALD (SBN 158338)
10 SPINELLI, DONALD & NOTT
     300 University Avenue, Suite 100
11   Sacramento, CA  95825-6518
     Telephone:  (916) 448-7888
12   Fax:  (916) 448-6888
     E-mail:  ScottD@SDNLaw.com
13 *Attorney for Defendant California*
   *Interscholastic Federation*

14

15              IN THE UNITED STATES DISTRICT COURT

16              FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                       WESTERN DIVISION

18

19

| UNITED STATES OF AMERICA, | Case No. 8:25-cv-01485-CV-JDE |
|---|---|
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| **CALIFORNIA INTERSCHOLASTIC FEDERATION and CALIFORNIA DEPARTMENT OF EDUCATION,** | Date:      Friday, October 24, 2025 |
| | Time:      1:30 p.m. |
| | Courtroom:  10B |
| Defendants. | Judge:      Hon. Cynthia Valenzuela |
| | Trial Date:  Not Set |
| | Action Filed: July 9, 2025 |

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................... 1

Background ................................................................................................ 2

    I.    Legal Background ........................................................................ 2

         A.    Title IX and School Athletics ....................................... 2

         B.    California's Longstanding School Athletics Policy ................. 2

         C.    The Trump Administration's Executive Orders Targeting Transgender Students ................................................. 4

    II.    Procedural Background ............................................................... 5

         A.    OCR Investigations ....................................................... 5

         B.    Plaintiff's Complaint .................................................... 6

Legal Standard ......................................................................................... 7

Argument .................................................................................................. 7

    I.    Plaintiff Has Failed to State a Cognizable Title IX Claim ................... 8

         A.    Title IX and the Regulations Do Not Require the Exclusion of Transgender Girls from Girls' Sports or Facilities ....................................................................... 8

         B.    Plaintiff Cannot Rely on the Gender EO or Sports Ban EO as a Basis for Title IX Enforcement ..................... 11

         C.    Plaintiff Fails to Plead Facts to Support Valid Title IX Claims ..................................................................... 13

             1.    Plaintiff Fails to State an Effective Accommodation Claim ......................................... 14

             2.    Plaintiff Fails to State an Equal Treatment Claim ......... 16

             3.    Plaintiff Fails to Allege Any Violation of Overall Title IX Compliance ....................................... 17

         D.    Plaintiff's Title IX Retaliation Allegation Is Neither Legally Cognizable nor Plausibly Pleaded ............................. 18

    II.    The Spending Clause Requires Dismissal of the Complaint ............. 18

Conclusion .............................................................................................. 22

i

# TABLE OF AUTHORITIES

**Page**

CASES

*A.C. v. Metro. Sch. Dist. of Martinsville*
   75 F.4th 760 (7th Cir. 2023) ............................................................... 9

*Adams v. Sch. Bd. of St. Johns Cnty.*
   57 F.4th 791 (11th Cir. 2022) ............................................................. 9

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*
   548 U.S. 291 (2006) ......................................................................... 19

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................... 7

*B.P.J. v. W. Va. State Bd. of Educ.*
   98 F.4th 542 (4th Cir. 2024) ............................................................. 16

*Barnes v. Gorman*
   536 U.S. 181 (2002) ......................................................................... 19

*Bostock v. Clayton County*
   590 U.S. 644 (2020) ........................................................................... 9

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
   824 F.3d 1156 (9th Cir. 2016) ............................................................ 7

*City and County of San Francisco v. Trump*
   897 F.3d 1225 (9th Cir. 2018) .......................................................... 11

*City of Los Angeles v. Barr*
   929 F.3d 1163 (9th Cir. 2019) .................................................... 19, 22

*Cohen v. Brown Univ.*
   991 F.2d 888 (1st Cir. 1993) ............................................................ 14

*Cummings v. Premier Rehab Keller, P.L.L.C.*
   596 U.S. 212 (2020) ......................................................................... 19

*Davis v. Monroe Cnty. Bd. of Educ.*
   526 U.S. 629 (1999) ......................................................................... 19

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Doe v. Horne*
4        115 F.4th 1083 (9th Cir. 2024)................................................9, 17, 21

5

*Doe v. Snyder*
6        28 F.4th 103 (9th Cir. 2022).................................................2, 9, 20

7

*Emeldi v. Univ. of Or.*
8        698 F.3d 715 (9th Cir. 2012) ...............................................18

9

*Grabowski v. Ariz. Bd. of Regents*
         69 F.4th 1110 (9th Cir. 2023)..............................................2, 9

10

*Grimm v. Gloucester Cnty. Sch. Bd.*
11       972 F.3d 586 (4th Cir. 2020) ...............................................9

12

*Hecox v. Little*
13       104 F.4th 1061 (9th Cir. 2023)..........................................10, 13, 17, 20

14

*Kroessler v. CVS Health Corp.*
15       977 F.3d 803 (9th Cir. 2020) ...............................................7

16

*Loper Bright Enters. v. Raimondo*
17       603 U.S. 369 (2024) .......................................................10, 11

18

*Mansourian v. Regents of the Univ. of Cal.*
19       602 F.3d 957 (9th Cir. 2010).............................................2, 13, 14, 16

20

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto.*
         *Ins. Co.*
21       463 U.S. 29 (1983) .........................................................12

22

*Neal v. Bd. of Trs.*
23       198 F.3d 763 (9th Cir. 1999)...............................................14

24

*Ollier v. Sweetwater Union High Sch. Dist.*
25       768 F.3d 843 (9th Cir. 2014).............................................14, 15, 16, 18

26

*Parents for Priv. v. Barr*
27       949 F.3d 1210 (9th Cir. 2020).............................................10, 11, 20, 21

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Perez v. Mortg. Bankers Ass'n*
    575 U.S. 92 (2015) .................................................................... 12

*Roe v. Critchfield*
    137 F.4th 912 (9th Cir. 2025) ..........................................8, 9, 19, 21

*Wilson v. Lynch*
    835 F.3d 1083 (9th Cir. 2016) ................................................... 12

**STATUTES**

5 U.S.C.
    § 553 ..................................................................................... 11
    § 706 ..................................................................................... 11

20 U.S.C.
    §§ 1681-1688 ................................................................*passim*
    § 1681(a) .............................................................................2, 8

California Civil Code
    § 51 ....................................................................................... 3

California Education Code
    § 210.7 ................................................................................... 3
    § 221.5 ................................................................................2-3
    § 33353 ................................................................................... 4
    § 33354 ................................................................................... 4
    § 35179 ................................................................................... 4

California Government Code
    § 11135 ................................................................................... 3
    § 12926 ................................................................................... 3
    § 12940 ................................................................................... 3

**REGULATIONS**

34 C.F.R.
    pt. 106 ..............................................................................2, 19-20
    § 106.2 ................................................................................... 2
    § 106.41 ..............................................................................*passim*

**TABLE OF AUTHORITIES**
(continued)

Page

COURT RULES

Cental District of California Local Rule 83-3.1.2 ...................................................... 6

Federal Rule of Civil Procedure 12(b)(6)................................................................. 7

OTHER AUTHORITIES

1979 Policy Interpretation,
    44 Fed. Reg. 71413 (Dec. 11, 1979) ................................................13, 14, 16, 17

Assembly Bill
    887, 2011-2012 Sess. (Cal. 2011) ........................................................................ 3
    1266, 2013-2014 Sess. (Cal. 2013) .....................................................................2-3

Assembly Committee on Education,
    AB 1266 Bill Analysis, 2013-2014 Sess. (Cal. 2013)........................................... 3

Brief for the United States as Amicus Curiae in Support of Plaintiff-
    Appellant and Urging Reversal, *B.P.J. v. W. Va. State Bd. of Educ.*,
    98 F.4th 542 (4th Cir. 2024) (No. 23-1078).........................................................21

Executive Order
    No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025)....................................4, 5, 12, 13
    No. 14183, 90 Fed. Reg. 8757 (Feb. 3, 2025) ....................................................... 5
    No. 14201, 90 Fed. Reg. 9279 (Feb. 11, 2025)..................................................... 5

Nondiscrimination on the Basis of Sex in Education Programs or
    Activities Receiving Federal Financial Assistance,
    89 Fed. Reg. 33474 (Apr. 29, 2024)....................................................................20

Senate Bill
    777, 2007-2008 Sess. (Cal. 2007) ........................................................................ 3

U.S. Department of Education, Office for Civil Rights,
    Dear Colleague Letter (Feb. 4, 2025).....................................................5, 11, 12

v

# INTRODUCTION

For over a decade, California law has prohibited discrimination on the basis of gender identity in state educational institutions. To that end, California law, and a related bylaw and informational guidelines of Defendant California Interscholastic Federation ("CIF"), have long allowed transgender students to access school sports and facilities in accordance with their gender identity. Until this year, the U.S. Department of Education ("ED"), including its Office for Civil Rights ("OCR"), had never suggested that California's inclusive school athletics violate Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX").

Following a series of executive orders targeting transgender youth, OCR now claims that the inclusion of transgender girls in girls' school sports and facilities violates the rights of cisgender girls. On that basis, OCR investigated Defendants and found them in violation of Title IX. When Defendants declined OCR's proposed resolution to categorically exclude transgender girls from girls' sports—in violation of state law and Ninth Circuit precedent interpreting Title IX—OCR referred the matter to the U.S. Department of Justice ("U.S. DOJ") for enforcement. This led to the present action. Plaintiff United States of America now seeks to retroactively require, as a condition on federal funding, the categorical exclusion of transgender girls from girls' athletics.

Contrary to Plaintiff's assertions, Title IX contains no such requirement—and the categorical exclusion of transgender girls would be a form of sex discrimination prohibited by Title IX. Even if it were not, Defendants have not alleged any facts to establish a violation of Title IX under applicable legal standards. And Plaintiff's attempt to retroactively condition Title IX funds on the categorical exclusion of transgender girls from school-sponsored girls' athletics and facilities violates the Spending Clause. Given these and other defects, the complaint should be dismissed without leave to amend.

1

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

**BACKGROUND**

## I.    LEGAL BACKGROUND

### A.    Title IX and School Athletics

Title IX prohibits discrimination "on the basis of sex . . . under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). While the statute itself does not address school athletics programs, *see generally* 20 U.S.C. §§ 1681-1688, ED has promulgated implementing regulations addressing school athletics, 34 C.F.R. § 106.41 (2025; promulgated May 9, 1980).

The regulations establish a general rule prohibiting sex-separated athletics, *id.* § 106.41(a), and provide an exception allowing—but not requiring—sex-separated teams "where selection for such teams is based upon competitive skill or the activity involved is a contact sport," *id.* § 106.41(b). The regulations interpret Title IX to require "equal athletic opportunity for members of both sexes," such that "both sexes" are effectively accommodated in "the selection of sports and levels of competition," and enjoy equal treatment in the provision of "schedules, equipment, coaching, and other factors." *Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957, 964-65 (9th Cir. 2010) (citing § 106.41(c)).

The regulations, like Title IX itself, do not define "sex" or address "gender identity." *See* 34 C.F.R. § 106.2 (2025; promulgated May 9, 1980) (establishing definitions). *See generally* 34 C.F.R. pt. 106. However, the Ninth Circuit, like some other circuits, construes Title IX's prohibition of sex discrimination to prohibit discrimination on the basis of gender identity. *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022); *accord Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116-18 & n.1 (9th Cir. 2023).

### B.    California's Longstanding School Athletics Policy

In 2013, the California State Legislature enacted Assembly Bill 1266, codified at section 221.5(f) of the California Education Code, which states: "A pupil shall be permitted to participate in sex-segregated school programs and activities, including

2

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

athletic teams and competitions, and use facilities consistent with his or her gender identity, irrespective of the gender listed on the pupil's records." In passing AB 1266, the Legislature recognized existing California law prohibiting discrimination on the basis of gender identity in any education program or activity receiving state funding. Assemb. B. 1266, 2013-2014 Sess. (Cal. 2013); *see also* Assemb. B. 887, 2011-2012 Sess. (Cal. 2011) (amending provisions of California Education Code to enumerate gender identity and gender expression as protected characteristics). And at the time AB 1266 became law, California law already defined "[g]ender" to be equivalent to "sex," and to include "gender identity and gender expression . . . whether or not stereotypically associated with the person's assigned sex at birth." Cal. Educ. Code § 210.7 (2025); *see also* S.B. 777, 2007-2008 Sess. (Cal. 2007) (creating § 210.7); Assemb. B. 887 (amending § 210.7).[1]

AB 1266 was intended to ensure that transgender and intersex students have equal access to school-sponsored athletics, which is critical for their health and well-being, just as it is for any youth. Assemb. Comm. on Educ., AB 1266 Bill Analysis, 2013-2014 Sess., at 3 (Cal. 2013). The Legislature also recognized that since transgender student athletes "display a great deal of physical variation," it is inaccurate "to assume that all male-bodied people are taller, stronger, and more highly skilled in a sport than all female-bodied people," or that "transgender women will have an unfair advantage over non-transgender women." *Id.* at 2-3. Further, reviewing "the entire 40 year history of 'sex verification' procedures in international sport competitions," the Legislature found no instances of so-called "fraud," and no evidence "that boys or men will pretend to be female to compete on a girls' or women's team." *Id.* at 3.

---

[1] California has many other laws prohibiting gender-identity discrimination in various contexts. *E.g.*, Cal. Civ. Code § 51(b), (e)(6) (2025) (public accommodations); Cal. Gov't Code §§ 11135(a), (c), 12926(r)(2) (2025) (programs receiving state funding); Cal. Gov't Code § 12940(a) (2025) (employment).

3

CIF has adopted a bylaw and guidelines consistent with AB 1266.[2] In 2013, for example, CIF adopted Bylaw 300.D, which provides: "All students should have the opportunity to participate in CIF activities in a manner that is consistent with their gender identity, irrespective of the gender listed on a student's records." *See* Compl. ¶ 52, Dkt. No. 1. CIF has also published informational guidelines on access to facilities like locker rooms that comport with AB 1266. *Id.* ¶ 55. Defendant California Department of Education ("CDE") has likewise issued guidance to school districts reiterating the requirements of AB 1266. *Id.* ¶¶ 46, 49.

For twelve years, California has guaranteed transgender and intersex students access to school sports and facilities consistent with their gender identity. Until this year, neither ED nor any other agency has taken enforcement action treating the requirements of AB 1266 as inconsistent with Title IX.

## C. The Trump Administration's Executive Orders Targeting Transgender Students

Immediately upon taking office, President Trump began issuing a series of executive orders intended to exclude and vilify transgender individuals, effectively seeking to erase transgender individuals from society. On January 20, 2025, he issued an executive order (the "Gender EO") alleging that transgender identity is "corrosive" to "the entire American system." Exec. Order No. 14168, 90 Fed. Reg. 8615, 8615 (Jan. 30, 2025). Ignoring scientific and medical consensus on the subject, the Gender EO seeks to erase the existence of transgender people, stating that "the policy of the United States [is] to recognize two sexes, male and female," which "are not changeable and are grounded in fundamental and incontrovertible reality." *Id.* To that end, the Gender EO sets forth definitions of terms like "sex," "male," and "female" to reflect the purportedly "immutable biological reality of

---

[2] In 1981, the California State Legislature authorized CIF, a voluntary statewide nonprofit, to govern interscholastic athletics in California. CIF functions pursuant to multiple provisions of the California Education Code. *See* Cal. Educ. Code §§ 33353, 33354, 35179 (2025).

4

sex"; declares transgender identity to be "false"; and prohibits federal agencies from using the word "gender." *Id.* at 8615-16; *see also* Compl. ¶ 27.[3] ED subsequently stated (without going through notice-and-comment rulemaking) that "ED and OCR must enforce Title IX consistent with President Trump's Order."[4]

On February 5, 2025, President Trump issued an executive order (the "Sports Ban EO") directing the Secretary of Education to "prioritize Title IX enforcement actions against educational institutions" and related "athletic associations" that allow transgender girls to participate in girls' sports and access girls' facilities. Exec. Order No. 14201, 90 Fed. Reg. 9279, 9279 (Feb. 11, 2025). The Sports Ban EO incorporates the definitions of the Gender EO, refers to transgender girls and women as "men," and seeks to categorically ban transgender girls and women from girls' and women's sports. *Id.*; *see also* Compl. ¶ 27.

## II.    PROCEDURAL BACKGROUND

### A.    OCR Investigations

On February 12, 2025, OCR informed CIF that it was opening an investigation to determine whether CIF's "provision of student athletics" violates Title IX by including transgender girls in girls' sports and facilities. Compl. ¶ 98. On April 4, 2025, OCR sent a similar notification of a directed investigation to CDE. *Id.* ¶ 99.

On June 25, 2025, OCR issued a letter of findings to CDE and CIF, notifying them that they had been found in violation of Title IX. Compl. ¶ 100. OCR included a proposed resolution agreement with the letter of findings and gave CDE and CIF until July 7, 2025 to sign the resolution. *See id.* ¶¶ 100-101. On July 7, 2025, CDE and CIF notified OCR that they would not sign the resolution; ED subsequently

---

[3] In another executive order, President Trump baselessly claimed that "expressing a false 'gender identity'" is incompatible with "an honorable, truthful, and disciplined lifestyle." Exec. Order No. 14183, 90 Fed. Reg. 8757, 8757 (Feb. 3, 2025).

[4] U.S. Dep't of Educ., Off. for C.R., Dear Colleague Letter (Feb. 4, 2025), https://www.ed.gov/media/document/title-ix-enforcement-directive-dcl-109477.pdf.

5

referred the matter to U.S. DOJ for enforcement, leading to this lawsuit. *Id.* ¶¶ 102, 104.

### B.    Plaintiff's Complaint

Plaintiff's complaint pleads two counts: (1) alleged violation of Title IX, 20 U.S.C. §§ 1681-1688, and (2) alleged violation of "contractual assurance agreements" stemming from CDE's acceptance of federal funds. Compl. ¶¶ 106-116. Specifically, the complaint alleges that CDE and CIF's "policies and practices" that allow transgender girls to participate in interscholastic athletics and access facilities consistent with their gender identity "discriminate based on sex," "den[y] girls educational opportunities," and "caus[e] a hostile educational environment." Compl. ¶¶ 4-5, 9, 45. Plaintiff appears to allege that these "policies and practices"—which are consistent with, and required by, California law— inherently violate Title IX on its face. *See id.* ¶ 45.

To support this alleged Title IX violation, Plaintiff describes five "examples" of transgender girls who competed in girls' interscholastic athletic events.[5] Compl. ¶¶ 65-85. The complaint also alleges one instance where a student may have improperly accessed a locker room, *id.* ¶ 89, and one instance of "retaliation" in which school officials asked two students to cover or remove T-shirts protesting a transgender girl's inclusion on a cross-country team, *id.* ¶ 97.

Absent from the complaint are any facts alleging that, in any school program or activity operating in California, cisgender girls are unable to participate on sports teams or compete in their chosen sports, that they were denied effective accommodation in the available selection of sports or levels of competition, or that

---

[5] Plaintiff repeatedly calls transgender girls "male" and "boys," and incorrectly refers to transgender girls with he/him pronouns. *E.g.*, Compl. ¶¶ 9, 65-66, 68-74, 76-77, 81-82, 85, 117(c)(1). Defendants respectfully request that Plaintiff avoid this terminology moving forward in this action. *See* Cal. Rules of Pro. Conduct r. 8.4.1(a)(1), (c)(1) (Cal. State Bar 2018) (listing "gender identity" and "gender expression" as protected characteristics); C.D. Cal. R. 83-3.1.2 (adopting California Rules of Professional Conduct).

6

they experience unequal treatment in school sports within the meaning of Title IX's regulations. *See generally* Compl.

Plaintiff seeks a "declaratory judgment that Defendants' policies, practices, and actions violate Title IX" and monetary damages. Compl. ¶ 117(a), (d). The complaint also requests a "permanent injunction" requiring CDE and CIF to "[i]ssue directives to all California CIF member schools" to bar transgender girls from girls' sports, establish "a monitoring and enforcement system" to that end, and "compensate [cisgender] female athletes" who have been impacted by Defendants' alleged Title IX violations. *Id.* ¶ 117(c).

## LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper when a complaint "fails to state a cognizable legal theory" or to "allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While the Court must assume that a complaint's well-pleaded factual allegations are true, this assumption does not extend to legal conclusions or to legal conclusions framed as factual allegations. *Id.* at 678-79. When a complaint is dismissed, leave to amend should be denied when amendment would be "futile," including when "no amendment would allow the complaint to withstand dismissal as a matter of law." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814-15 (9th Cir. 2020).

## ARGUMENT

Plaintiff's complaint must be dismissed because, as a matter of law, Plaintiff's interpretation of Title IX is foreclosed by binding Ninth Circuit precedent, and because Plaintiff fails to allege facts sufficient to establish any viable Title IX claim. The Court should also dismiss because Defendants did not have clear notice,

7

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

as required by the Spending Clause, of the condition Plaintiff now seeks to impose on federal funding.

## I.    PLAINTIFF HAS FAILED TO STATE A COGNIZABLE TITLE IX CLAIM

Title IX and its regulations do not exclude transgender girls from girls' athletics and facilities, and Plaintiff cannot rely on either the Gender EO or the Sports Ban EO to read this prohibition into the law. Moreover, Plaintiff has not pleaded (nor can Plaintiff plead) facts sufficient to support any actionable Title IX claim based on effective accommodation, equal treatment, or retaliation.

### A.    Title IX and the Regulations Do Not Require the Exclusion of Transgender Girls from Girls' Sports or Facilities

Plaintiff alleges that the inclusion of transgender girls in girls' sports and facilities violates Title IX by discriminating against (cisgender) girls on the basis of sex. Compl. ¶ 4. But Plaintiff's attempt to cabin discrimination "on the basis of sex" to discrimination based on a person's sex identified at birth conflicts with controlling Ninth Circuit precedent. In the Ninth Circuit, "precedent establishes that discrimination on the basis of transgender status is a form of sex-based discrimination." *Roe v. Critchfield*, 137 F.4th 912, 928 (9th Cir. 2025). Even if it did not, Plaintiff fails to allege a cognizable Title IX claim because neither Title IX nor its regulations dictate that schools must exclude transgender students from the sports teams and facilities that correspond with their gender identity.

As discussed above, Title IX prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a). While the text of the statute does not address athletic programs, *see generally* §§ 1681-1688, ED's regulations delineate standards for school athletics offered by recipients of federal funds, 34 C.F.R. § 106.41. Under the regulations, schools generally may not exclude students "on the basis of sex" from athletics programs, but may operate "separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." *Id.* § 106.41(a)-(b). Schools "shall provide equal

8

athletic opportunity for members of both sexes." *Id.* § 106.41(c). Title IX and its regulations do not define "sex."

Plaintiff contends that "sex" in Title IX and the regulations means "biological sex," as defined by a child's sex identified at birth. *See* Compl. ¶ 26. Neither Title IX nor the regulations compel this interpretation. *See, e.g.*, *A.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 770 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024). Moreover, the Ninth Circuit has determined that discrimination "on the basis of sex" in Title IX encompasses discrimination on the basis of transgender status. *Cf. Bostock v. Clayton County*, 590 U.S. 644, 655, 659-60 (2020) (concluding that sex discrimination under Title VII includes gender-identity discrimination). The Ninth Circuit "construe[s] Title IX's protections consistently with those of Title VII," and has relied on the Supreme Court's decision in *Bostock* to hold that Title IX prohibits discrimination on the basis of gender identity. *Snyder*, 28 F.4th at 114; *accord Grabowski*, 69 F.4th at 1116-18.[6] Plaintiff's requested relief—a permanent injunction categorically barring transgender girls from girls' sports and facilities—would prohibit transgender girls from participating in school athletics consistent with their gender identity, while all other students (including transgender boys) are permitted to do so. Such treatment is "the essence of discrimination" on the basis of sex, *Doe v. Horne*, 115 F.4th 1083, 1107 (9th Cir. 2024), *petition for cert. filed*, No. 24-449, and would likely violate Title IX under controlling law.

Additionally, even assuming that "sex" in Title IX refers only to sex identified at birth, nothing in Title IX or its regulations *requires* the exclusion of transgender

---

[6] As the Ninth Circuit recently acknowledged, there is a circuit split over the question of whether "'sex' unambiguously refers to sex assigned at birth" in Title IX. *Critchfield*, 137 F.4th at 928. *Compare Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022) (en banc), *with A.C.*, 75 F.4th at 770, *and Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021). But in the Ninth Circuit, "precedent establishes that discrimination on the basis of transgender status is a form of sex-based discrimination." *Critchfield*, 137 F.4th at 928.

9

girls from girls' sports. Far from mandating sex-separated sports, the regulations generally prohibit schools from separating athletics on the basis of sex. 34 C.F.R. § 106.41(a). While funding recipients "*may* operate or sponsor separate teams for members of each sex" under certain circumstances, § 106.41(b) (emphasis added), this provision—contra Plaintiff's assertions—nowhere "requires that . . . the teams that the program designates as female teams must be completely separated by sex," Compl. ¶ 31.[7] Indeed, in certain circumstances, the regulations require sex-separated teams to provide try-outs for members of the opposite sex. § 106.41(b). Subsection (c) requires schools to provide "equal athletic opportunity," but does not require schools to use sex-separated teams as the exclusive means of doing so. § 106.41(c). Thus, the regulations do not mandate sex-separated teams at all, and in the circumstances in which sex-separated teams are permitted, the regulations do not prohibit transgender students from participating on those teams in accordance with their gender identity.

The same is true of facilities such as bathrooms and locker rooms. Neither the statute nor the regulations require sex-separated facilities to effectuate Title IX's prohibition of sex discrimination. As the Ninth Circuit has explained, "just because Title IX authorizes sex-segregated facilities" (i.e., "school bathrooms, locker rooms, and showers") "does not mean that they are required, let alone that they must be segregated based only on biological sex and cannot accommodate gender identity." *Parents for Priv. v. Barr*, 949 F.3d 1210, 1217, 1227 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 894 (2020).[8] Title IX simply does not require the exclusion

---

[7] The Court "may not defer" to ED's and Plaintiff's interpretation of Title IX, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024), especially where it appears, as here, that the interpretation is motivated by discriminatory animus, *cf. Hecox v. Little*, 104 F.4th 1061, 1086 (9th Cir. 2023) (determining that categorical ban on transgender female athletes likely failed heightened scrutiny in part because it was intended "'to convey a message of disfavor' toward transgender women and girls"), *as amended* (June 7, 2024), *cert. granted*, 2025 WL 1829165 (July 3, 2025).

[8] Plaintiff's allegations of a hostile environment, *e.g.*, Compl. ¶¶ 5, 9, 86-89, are foreclosed by Ninth Circuit precedent: in *Parents for Privacy*, the court held that the mere presence of transgender students in "locker and bathroom facilities" does not create a hostile or harassing environment, 949 F.3d at 1227, 1228-29.

10

1  Plaintiff demands: "Nowhere does the statute explicitly state, or even suggest, that

2  schools may not allow transgender students to use the facilities that are most

3  consistent with their gender identity." *Id.* at 1227.

4      Because Title IX does not require school athletics and facilities to be separated

5  by sex identified at birth—and because categorically excluding transgender girls

6  from girls' athletics would constitute sex discrimination in violation of Title IX—

7  Plaintiff fails to state a cognizable claim that Defendants' "policies and practices"

8  under AB 1266 violate Title IX, and this case must be dismissed with prejudice.

9      **B.    Plaintiff Cannot Rely on the Gender EO or Sports Ban EO as a**

10         **Basis for Title IX Enforcement**

11      Plaintiff also cannot rely on the definitions of the Gender EO, *see* Compl.

12  ¶ 27, to change the meaning of Title IX and establish its claims. It is not clear

13  whether Plaintiff asserts that the Gender EO or Sports Ban EO govern the

14  interpretation of Title IX or create a basis for Title IX enforcement. *See id.* (alleging

15  EOs are "[c]onsistent with" Plaintiff's interpretation of Title IX without directly

16  relying on EOs as enforceable legal authority).[9] Such an assertion would be

17  incorrect, since the Gender EO and Sports Ban EO cannot amend Title IX. *See, e.g.*,

18  *City and County of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018)

19  (quoting *Clinton v. City of New York*, 524 U.S. 417, 438 (1998)). And in any event,

20  reliance on the EOs to enforce Title IX would violate the Administrative Procedure

21  Act ("APA") for at least two reasons: (1) ED did not go through notice and

22  comment to amend Title IX's regulations to include the policy and definitions of

23  the Gender EO, and (2) ED has not provided a reasoned explanation for adopting

24  the Gender EO. *See* 5 U.S.C. §§ 553(b), 706(2)(A), (D).[10]

25

26  _____

27  [9] ED itself, though, has treated the EOs as binding legal authority. *See, e.g.*,
    Dear Colleague Letter, *supra* n.4.

28  [10] Again, the Court also "may not defer" to ED's interpretation of Title IX to
    align with the Gender EO. *See Loper Bright*, 603 U.S. at 413.

11

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

First, ED has announced that "ED and OCR must enforce Title IX consistent with" the Gender EO to "'promote [the] reality' that there are 'two sexes, male and female,' and that '[t]hese sexes are not changeable and are grounded in fundamental and incontrovertible reality.'" Dear Colleague Letter, *supra* n.4 (alterations in original). But the agency has not undertaken notice-and-comment rulemaking to incorporate the Gender EO into Title IX's implementing regulations. As discussed above, the Gender EO's policy and definitions are nowhere to be found in Title IX or its regulations. Thus, by adopting the Gender EO as a basis for Title IX enforcement, ED effectively established a new rule, with corresponding obligations for funding recipients. But an agency cannot promulgate a rule with the "force and effect of law" without following the APA's notice-and-comment requirements. *E.g.*, *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95-96 (2015); *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016).

Second, agencies must "examine the relevant data" when acting and articulate a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). They must not "entirely fail[] to consider an important aspect of the problem." *Id.* at 43.[11] But Defendants are not aware of any source in which ED has offered any facts, evidence, or reasoned explanation as to why the policy and definitions of the Gender EO should govern the interpretation of Title IX.[12] Despite purporting to incorporate the Gender EO into Title IX enforcement, ED has not "examine[d]" any "relevant data," *see id.*, as the agency has not offered any facts or evidence to support its adoption of the Gender EO. Nor may ED follow the Gender EO's simple denial that transgender and intersex individuals exist, contrary

---

[11] *State Farm* sets out further grounds for holding agency action arbitrary and capricious, 463 U.S. at 43, but these involve factual disputes beyond the scope of a motion to dismiss.

[12] The Gender EO itself—despite claiming to represent "the immutable biological reality of sex," 90 Fed. Reg. at 8615—likewise offers no empirical support for its positions; it is mere fiat.

to established medical and scientific consensus. *Compare* 90 Fed. Reg. at 8615 (claiming that transgender identity is "false"), *with Hecox*, 104 F.4th at 1068-69, 1076-77 & n.9 (discussing medically recognized existence of transgender and intersex individuals). Because the existence of these individuals certainly constitutes an "important aspect" of any regulation involving sex discrimination under Title IX, ED cannot simply selectively ignore reality when regulating or enforcing Title IX. Due to these glaring and unreasonable omissions, Plaintiff cannot now enforce Title IX on the basis of the Gender EO.

### C.    Plaintiff Fails to Plead Facts to Support Valid Title IX Claims

Plaintiff claims that allowing transgender girls to participate in girls' sports and access girls' facilities inherently and facially denies equal athletic benefits and opportunities to cisgender girls. Compl. ¶ 45. In determining whether equal opportunities are available to both sexes, Title IX's regulations set forth standards for "effective accommodation" and "equal treatment." *See Mansourian*, 602 F.3d at 964-65. Effective accommodation claims turn on whether a funding recipient's "selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes." *Id.* at 964 (quoting 34 C.F.R. § 106.41(c)(1)). Equal treatment claims involve whether there are "sex-based differences" in a recipient's provision of benefits like equipment, scheduling, coaching, and other factors. *Id.* at 964-65 (citing 34 C.F.R. § 106.41(c)(2)-(10)). In addition to these standards, ED may also make a finding of overall compliance (or lack thereof) with Title IX. *See* 1979 Policy Interpretation, 44 Fed. Reg. 71413, 71417-18 (Dec. 11, 1979).

In this case, Plaintiff does not plausibly allege *any* violation of effective accommodation, equal treatment, or overall compliance, much less a *facial* violation of Title IX.[13]

---

[13] Despite a passing reference to "effective[] accommodat[ion]," the complaint does not identify which requirement of "equal athletic opportunity" is

(continued…)

13

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

1       **1.     Plaintiff Fails to State an Effective Accommodation Claim**

2           Plaintiff alleges that Defendants have failed to "effectively accommodate[]"

3    cisgender girls' athletic interests. Compl. ¶¶ 90-95. However, the complaint does

4    not adequately plead a violation of effective accommodation, because Plaintiff does

5    not address the test that the Ninth Circuit has adopted to adjudicate effective

6    accommodation claims, nor does Plaintiff plead sufficient facts to support such a

7    claim.

8           The Ninth Circuit evaluates "effective accommodation" claims using a three-

9    part test drawn from the 1979 Policy Interpretation, originally promulgated by the

10    former U.S. Department of Health, Education, and Welfare, and subsequently

11    adopted by ED. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 854 (9th

12    Cir. 2014) (quoting 44 Fed. Reg. at 71418); *Mansourian*, 602 F.3d at 965; *Neal v.*

13    *Bd. of Trs.*, 198 F.3d 763, 767-68 (9th Cir. 1999); *see also Cohen v. Brown Univ.*,

14    991 F.2d 888, 896 (1st Cir. 1993) (discussing history of 1979 Policy Interpretation

15    and establishment of ED). Under the test, a school's athletic program must satisfy

16    any one of the following conditions: (1) "participation opportunities for male and

17    female students are provided in numbers substantially proportionate to their

18    respective enrollments"; or, if there is not substantial proportionality, (2) "the

19    institution can show a history and continuing practice of program expansion which

20    is demonstrably responsive to the developing interest and abilities of the members

21    of [the underrepresented] sex"; or, if there is neither substantial proportionality nor

22    ongoing program expansion, (3) "the interests and abilities of the members of [the

23    underrepresented] sex have been fully and effectively accommodated by the present

24    program." *Ollier*, 768 F.3d at 854.

25

26

---

27    allegedly violated by the requirements of AB 1266, nor does Plaintiff cite any of the
relevant legal standards under 34 C.F.R. § 106.41(c). *E.g.*, Compl. ¶¶ 6, 33, 90-95.

28    For completeness' sake, Defendants address both effective accommodation and
equal treatment, as well as those standards' shared factors for overall compliance.

14

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

Plaintiff has not pleaded facts that support a valid effective accommodation claim against Defendants. Plaintiff has not alleged—for any school in California, much less at a statewide level—that the percentage of cisgender girls enrolled in a school are substantially disproportionate to the percentage of cisgender girls in that school's athletics programs, or that cisgender girls are underrepresented in school athletics.[14] *See generally* Compl. Instead, Plaintiff apparently attempts to plead an effective accommodation claim by asserting that some cisgender girls "have expressed [an] interest . . . in female-only sports teams and competitions." *Id.* ¶ 91. As discussed above, however, neither Title IX nor the regulations mandate "female-only sports teams," *see* 34 C.F.R. § 106.41(a)-(b), precluding an effective accommodation claim on such basis.

The three-part test also forecloses Plaintiff's conclusory allegation that the inclusion of transgender girls in girls' sports reduces the athletic opportunities available to cisgender girls. *See* Compl. ¶ 95. Even assuming this were true (which Defendants do not concede), this allegation is wholly inadequate to suggest that any school in California—let alone the entire state—fails all three prongs of the effective accommodation test. Under the first prong alone, for example, Plaintiff would need to plausibly allege that cisgender girls' enrollment and athletic participation opportunities at a given school are not "substantially proportionate" at a program-wide level. *See, e.g.*, *Ollier*, 768 F.3d at 855-57. Instead, Plaintiff identifies only five transgender girls—at five different schools—who have allegedly "displace[d]" cisgender girls in athletics.[15] Compl. ¶¶ 65, 72, 77, 81, 85. This falls far short of the analysis required under Ninth Circuit law. *See, e.g.*,

_____

[14] Moreover, substantial proportionality does not require *exact* proportionality, and the comparison of school enrollment to athletic participation opportunities must account for "the institution's specific circumstances and the size of its athletic program." *Ollier*, 768 F.3d at 855-57 (conducting "substantial proportionality" analysis).

[15] Notably, CIF membership encompasses 1,615 high schools with "1.8 million students and over 750,000 student-athletes," Compl. ¶ 13, further demonstrating the infinitesimal overall impact of transgender girls' participation in girls' sports.

1    *Ollier*, 768 F.3d at 855-57. Under that analysis, moreover, it is simply not plausible

2    that the participation of a single transgender athlete could create a lack of

3    substantial proportionality in a school's athletics program. *See id.*

4         It is also worth noting that the "participation opportunities" Title IX protects

5    do not encompass particular outcomes, such as advancing to finals or winning a

6    medal. *See* 1979 Policy Interpretation, 44 Fed. Reg. at 71415 (defining

7    "participants" in terms of receiving coaching, attending practice, and being listed in

8    squad lists); *cf. B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 560 (4th Cir.

9    2024) (determining, for purposes of equal protection, that no governmental interest

10   exists "in ensuring that cisgender girls do not lose ever to transgender girls"), *cert.*

11   *granted*, 2025 WL 1829164 (July 3, 2025). Plaintiff cannot plead a cognizable

12   effective accommodation claim by selectively alleging instances in which a

13   transgender girl placed ahead of a cisgender girl. *See* Compl. ¶¶ 65-85. Moreover,

14   even while Plaintiff relies on the false assumption that transgender girls are always

15   physically advantaged compared to cisgender girls, *e.g.*, *id.* ¶¶ 7-8, the complaint

16   lists numerous examples of cisgender girls outperforming transgender girls, *id.*

17   ¶¶ 66, 69, 70, 76, 79, 82-83 (alleging second-, third-, fourth-, and fifth-place

18   rankings of transgender girls). The 1979 Policy Interpretation and Plaintiff's own

19   allegations thus defeat Plaintiff's "displacement" theory of an effective

20   accommodation violation.

21                **2.    Plaintiff Fails to State an Equal Treatment Claim**

22        Section 106.41(c)(2)-(10) sets forth the standards for "equal treatment" in

23   athletics under Title IX. An equal treatment claim focuses on "equivalence in the

24   availability, quality and kinds of other athletic benefits and opportunities provided

25   male and female athletes," such as "schedules, equipment, coaching, and other

26   factors." *Mansourian*, 602 F.3d at 964-65 (citing 34 C.F.R. § 106.41(c)(2)-(10)).

27        In the complaint, Plaintiff does not plead any facts to plausibly allege such a

28   violation—e.g., that cisgender girls are treated differently with respect to the

16

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

provision of equipment, per diem allowances, training facilities, or other benefits listed in § 106.41(c)(2)-(10). Even if Plaintiff did assert such factual allegations, equal treatment, like effective accommodation, is assessed at a "program-wide" level, *see* 44 Fed. Reg. at 71422, and Plaintiff has failed to allege any program-wide disadvantage in the provision of benefits to cisgender girls—let alone any such disadvantage stemming from the participation of transgender girls in girls' sports in California schools.

### 3. Plaintiff Fails to Allege Any Violation of Overall Title IX Compliance

In the 1979 Policy Interpretation, the standards for "effective accommodation" and "equal treatment" also include factors for assessing the overall Title IX compliance of athletics programs. 44 Fed. Reg. at 71417-18. Overall compliance depends on whether an institution's policies "are discriminatory in language or effect," whether there are "substantial and unjustified" disparities "in the benefits, treatment, services, or opportunities afforded male and female athletes" at a program-wide level, or whether such "disparities in individual segments of the program" are so significant as to "deny equality of athletic opportunity." *Id.*

Plaintiffs do not, and cannot, allege any such violations. The requirements of AB 1266 are gender-neutral, as *all* students are allowed to participate consistent with their gender identity, and there are no facts in the complaint to suggest that California's inclusionary school athletics were designed or implemented to disadvantage cisgender girls. Similarly, the complaint pleads no facts to suggest that there are "substantial and unjustified" disparities limiting girls' access to interscholastic athletic opportunities in California—nor would such allegations be plausible. *See, e.g.*, *Hecox*, 104 F.4th at 1083 (finding it "unlikely" that transgender women, who "represent about 0.6 percent of the general population," could "displace cisgender women from women's sports"); *Horne*, 115 F.4th at 1108

17

1  (finding no evidence that "tiny number" of transgender girls playing on girls' teams

2  could "displace cisgender females to a substantial extent").

3      In sum, Plaintiff has not plausibly alleged that the inclusion of transgender

4  girls in girls' sports violates Title IX. Allegations about five transgender athletes,

5  spread across five different schools, cannot support a claim that cisgender girls are

6  subject to disproportionalities or disparities in athletic participation. Because

7  nothing pleaded in the complaint rises to the level of actionable disparity under

8  Title IX, Plaintiff's claims should be dismissed.

9      **D.    Plaintiff's Title IX Retaliation Allegation Is Neither Legally**

10         **Cognizable nor Plausibly Pleaded**

11      Plaintiff alleges that Defendants have "engaged in retaliation against

12  [cisgender] girl student athletes who objected to the inclusion of [transgender

13  girls]." Compl. ¶ 96. In support, Plaintiff alleges only a single example, in which

14  two students wore T-shirts to protest the inclusion of a transgender girl on their

15  school's cross-country team, and school officials allegedly required the students "to

16  remove or cover their shirts." *Id.* ¶ 97. This allegation fails because the complaint

17  alleges no facts to establish that Defendants caused or had any role in the allegedly

18  "retaliatory" conduct, or any knowledge of the underlying T-shirts. *Cf., e.g.*, *Ollier*,

19  768 F.3d at 867 (requiring "causal link" between "protected activity" and "adverse

20  action" for "*prima facie* case of retaliation").[16] Thus, as with the rest of the

21  complaint, this allegation should be dismissed.

22  **II.    THE SPENDING CLAUSE REQUIRES DISMISSAL OF THE COMPLAINT**

23      Plaintiff's claims are also barred by the Spending Clause of the U.S.

24  Constitution, because CDE did not have—and could not have had—clear notice

25  that Title IX unambiguously requires, as a condition of federal funding, the

26  _____
     [16] Even if CDE or CIF were a proper defendant for this retaliation claim—
27  which they are not—Plaintiff's own allegations suggest that the school officials, by
    explaining how the T-shirts could be offensive, acted with "a legitimate,
28  nonretaliatory reason" of fostering an inclusive, nondiscriminatory school
    environment. *See Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012).

18

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

exclusion of transgender girls from girls' sports and facilities.[17] For over a decade, California law has permitted transgender youth to participate in school athletics in accordance with their gender identity. Yet this year marks the first time that the federal government has ever alleged that the requirements of AB 1266 violate Title IX's funding conditions.

Title IX was "enacted pursuant to Congress' authority under the Spending Clause." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). Under the "contract-law analogy" of Spending Clause legislation, *Barnes v. Gorman*, 536 U.S. 181, 186 (2002), conditions on federal funding must be imposed "unambiguously" to enable funding recipients to "exercise their choice knowingly, cognizant of the consequences of their participation," *City of Los Angeles v. Barr*, 929 F.3d 1163, 1174 (9th Cir. 2019). Recipients must therefore have "clear notice" of a funding condition prior to accepting funds. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). By the same token, funding conditions cannot be imposed "post acceptance" or "retroactively." *Los Angeles*, 929 F.3d at 1174-75. Courts accordingly "construe the reach of Spending Clause conditions with an eye toward ensuring that the receiving entity of federal funds had notice that it will be liable." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219 (2020) (citation modified). The clear-notice rule limits the availability of both money damages and injunctive relief, *Critchfield*, 137 F.4th at 930 & n.12, and applies equally to funding conditions imposed by agencies as to those set by Congress, *Los Angeles*, 929 F.3d at 1174-75 & n.6.

For multiple reasons, CDE could not have had clear notice that Title IX unambiguously requires the exclusion of transgender girls from girls' athletics and facilities:

First, neither Title IX nor its regulations indicate that the requirements of AB 1266 violate Title IX. *See generally* 20 U.S.C. §§ 1681-1688; 34 C.F.R.

---

[17] CIF does not receive federal funding. *Cf.* Compl. ¶¶ 13-17.

19

pt. 106. As discussed above, the statute and regulations do not define "sex" or "discrimination on the basis of sex" to exclude gender-identity discrimination, and do not prohibit transgender students from accessing athletics and facilities consistent with their gender identity. Moreover, at the time CDE submitted the relevant assurances to ED to receive federal funding, the Title IX regulations then in effect expressly listed gender-identity discrimination as a form of sex discrimination—a provision that is likely incompatible with the exclusionary funding condition Plaintiff now seeks to impose. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33474, 33886 (Apr. 29, 2024), *vacated*, *Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. 2025); *see also* Compl. ¶ 38 (noting CDE's assurances submitted November 20, 2024). Thus, Congress and ED have not given clear notice of the funding condition Plaintiff now attempts to retroactively apply.

Second, prevailing Ninth Circuit precedent also forecloses the argument that Title IX and its regulations unambiguously condition federal funding on the categorical exclusion of transgender girls from girls' athletics and facilities. The court has held that discrimination based on "transgender status is discrimination . . . 'on the basis of sex'" under Title IX. *Snyder*, 28 F.4th at 113-14. The court has held that Title IX authorizes, but does not require, "sex-segregated facilities" such as "school bathrooms, locker rooms, and showers," and allows such facilities to "accommodate [students'] gender identity." *Parents for Priv.*, 949 F.3d at 1217, 1227; *see also id.* at 1228-29 ("[T]he mere presence of transgender students in locker and bathroom facilities . . . does not constitute an act of harassment . . . ."). And the court has determined that categorical bans targeting transgender student athletes likely violate the Equal Protection Clause. *Hecox*, 104 F.4th at 1080-81,

20

Mem. of P. & A. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

1088 (affirming preliminary injunction); *Horne*, 115 F.4th at 1109-10 (same).[18] Simply put, California cannot have clear notice that Title IX *requires* a form of *prohibited* sex discrimination—or that Title IX *requires* what the Ninth Circuit has interpreted the Equal Protection Clause to *forbid*.

The Ninth Circuit's recent decision in *Critchfield* reinforces this analysis. In that case, the court determined, for purposes of the Spending Clause, that Title IX and its regulations do not "unambiguously" "prohibit[] the exclusion of transgender students from [facilities] corresponding to their gender identity." 137 F.4th at 929. But the court simultaneously reaffirmed its precedent in *Parents for Privacy* holding that Title IX allows sex-separated facilities to "accommodate gender identity," and does not require sex-separated facilities at all. *Id.* at 927 (quoting 949 F.3d at 1227). Taking *Critchfield* and *Parents for Privacy* together, Title IX and its regulations do not "unambiguously" *require* sex-separated facilities to accommodate students' gender identity, but they also do not "unambiguously" *prohibit* sex-separated facilities from accommodating students' gender identity. Again, binding Ninth Circuit law precludes a finding of clear notice that transgender girls must be categorically excluded from girls' sports and facilities.

Finally, California has protected transgender students' equal access to school athletics and facilities consistent with their gender identity since 2013. In that time, across three administrations, ED and the United States have never indicated, until OCR's investigations this year, that the requirements of AB 1266 violate Title IX. If California's inclusive school athletics so unambiguously violate Title IX, as Plaintiff now claims, one would expect ED or OCR to have taken enforcement action at *some* point during the past twelve years. The fact that they did not further suggests that CDE had no "clear notice" of a supposed funding condition in conflict

---

[18] In a similar case, Plaintiff filed an amicus brief in support of a transgender student athlete, arguing that categorical bans violate Title IX and the Equal Protection Clause. Br. for the United States as Amicus Curiae in Supp. of Pl.-Appellant & Urging Reversal, *B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024) (No. 23-1078).

with AB 1266—and that Plaintiff unconstitutionally seeks to impose this funding condition retroactively. *See Los Angeles*, 929 F.3d at 1174-75.

Because there was no clear notice of the funding condition Plaintiff seeks to impose, the Spending Clause bars Plaintiff's claims, requiring dismissal with prejudice.

## CONCLUSION

For the reasons stated above, the Court should grant Defendants' Joint Motion to Dismiss. Given the complaint's shortcomings as a matter of law, dismissal should be granted without leave to amend.


Dated:  September 5, 2025                    Respectfully submitted,

                                            ROB BONTA
                                            Attorney General of California
                                            DARRELL W. SPENCE
                                            Supervising Deputy Attorney General
                                            JONATHAN BENNER
                                            STACEY LEASK
                                            ANTHONY PINGGERA
                                            Deputy Attorneys General


                                            /s/ Edward Nugent
                                            EDWARD NUGENT (SBN 330479)
                                            Deputy Attorney General
                                            *Attorneys for Defendant Department of Education*

Dated:  September 5, 2025                    SPINELLI, DONALD & NOTT


                                            /s/ J. Scott Donald
                                            J. SCOTT DONALD (SBN 158338)
                                            *Attorney for Defendant California Interscholastic Federation*

22

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  September 5, 2025

/s/ Edward Nugent
EDWARD NUGENT
Deputy Attorney General
*Attorney for Defendant California Department of Education*

23

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant California Department of Education, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated:  September 5, 2025                         Respectfully submitted,

ROB BONTA
Attorney General of California


/s/ Edward Nugent
EDWARD NUGENT
Deputy Attorney General
*Attorneys for Defendant California Department of Education*