1   ROB BONTA
      Attorney General of California
2   DARRELL W. SPENCE (SBN 248011)
      Supervising Deputy Attorney General
3   STACEY L. LEASK (SBN 233281)
      JONATHAN BENNER (SBN 318956)
4   ANTHONY PINGGERA (SBN 320206)
      EDWARD NUGENT (SBN 330479)
5   Deputy Attorneys General
        455 Golden Gate Avenue, Suite 11000
6     San Francisco, CA  94102-7004
      Telephone:  (415) 510-3524
7     Fax:  (415) 703-5480
      E-mail:  Stacey.Leask@doj.ca.gov
8   *Attorneys for Defendant California
    Department of Education*
9
    J. SCOTT DONALD (SBN 158338)
10  SPINELLI, DONALD & NOTT
      300 University Avenue, Suite 100
11    Sacramento, CA  95825-6518
      Telephone:  (916) 448-7888
12    Fax:  (916) 448-6888
      E-mail:  ScottD@SDNLaw.com
13  *Attorney for Defendant California
    Interscholastic Federation*

14

15              IN THE UNITED STATES DISTRICT COURT

16            FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                      WESTERN DIVISION

18

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 8:25-cv-01485-CV-JDE |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| **v.** | |
| **CALIFORNIA INTERSCHOLASTIC FEDERATION and CALIFORNIA DEPARTMENT OF EDUCATION,** | Date:          Friday, October 24, 2025<br>Time:          1:30 p.m.<br>Courtroom:   10B<br>Judge:         Hon. Cynthia Valenzuela<br>Trial Date:   Not Set |
| Defendants. | Action Filed: July 9, 2025 |

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................................1

Argument ...................................................................................................1

I.    Plaintiff's Title IX Claims Fail as a Matter of Law..............................1

      A.    California Is Not in Violation of Title IX...................................1

            1.    Title IX does not prohibit the inclusion of transgender girls in school-sponsored sports ..................2

            2.    Binding Ninth Circuit law precludes Plaintiff's interpretation of Title IX ....................................4

            3.    California law effectuates Title IX's purpose to prohibit discriminatory practices in federally funded programs.................................................6

      B.    Plaintiff Fails to Plead Facts to Establish Title IX Claims........9

            1.    Plaintiff fails to allege a valid effective accommodation or equal treatment claim .....................10

            2.    There are no plausible facts to prove a Title IX violation based on policy guidance ...............................12

II.    The Spending Clause Precludes This Lawsuit...................................14

Conclusion ................................................................................................15

i

Reply Br. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*A.C. v. Metro. Sch. Dist. of Martinsville*
  75 F.4th 760 (7th Cir. 2023)................................................................2, 15

*Ames v. Ohio Dep't of Youth Servs.*
  605 U.S. 303 (2025) ......................................................................11, 12

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*
  548 U.S. 291 (2006) ...............................................................................15

*B.P.J. v. W. Va. State Bd. of Educ.*
  98 F.4th 542 (4th Cir. 2024)...........................................................13, 15

*Bostock v. Clayton County*
  590 U.S. 644 (2020) ...........................................................................4, 5

*City of Los Angeles v. Barr*
  929 F.3d 1163 (9th Cir. 2019).............................................................15

*Clark v. Ariz. Interscholastic Ass'n*
  695 F.2d 1126 (9th Cir. 1982)................................................................8

*Clark v. Ariz. Interscholastic Ass'n*
  886 F.2d 1191 (9th Cir. 1989)................................................................8

*Clinton v. City of New York*
  524 U.S. 417 (1998) ................................................................................3

*Craig v. Boren*
  429 U.S. 190 (1976) ................................................................................8

*Doe 2 v. Shahahan*
  917 F.3d 694 (D.C. Cir. 2019) ...............................................................9

*Doe v. Horne*
  115 F.4th 1083 (9th Cir. 2024)....................................................*passim*

*Doe v. Snyder*
  28 F.4th 103 (9th Cir. 2022).......................................................4, 5, 14

ii

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3
4
*Gebser v. Lago Vista Indep. Sch. Dist.*
    524 U.S. 274 (1998) ............................................................... 6

5
6
*Grabowski v. Ariz. Bd. of Regents*
    69 F.4th 1110 (9th Cir. 2023)................................................4, 6, 7

7
8
*Grimm v. Gloucester Cnty. Sch. Bd.*
    972 F.3d 586 (4th Cir. 2020).................................................. 15

9
*Heckler v. Chaney*
    470 U.S. 821 (1985)............................................................. 15

10
11
*Hecox v. Little*
    104 F.4th 1061 (9th Cir. 2024).......................................*passim*

12
13
*Loper Bright Enters. v. Raimondo*
    603 U.S. 369 (2024) ............................................................. 3

14
15
*Louisiana v. Dep't of Educ.*
    No. 24-30399, 2024 WL 3452887 (5th Cir. 2024)........................... 14

16
17
*Mansourian v. Regents of Univ. of Cal.*
    602 F.3d 957 (9th Cir. 2010)...............................................9, 11

18
19
*Maxon v. Fuller Theological Seminary*
    549 F. Supp. 3d 1116 (C.D. Cal. 2020)................................... 6

20
21
*Michael M. v. Super. Ct. of Sonoma Cnty.*
    450 U.S. 464 (1981) ............................................................. 8

22
*Neal v. Bd. of Trs.*
    198 F.3d 763 (9th Cir. 1999)................................................ 10

23
24
*Oklahoma v. Cardona*
    743 F. Supp. 3d 1314 (W.D. Okla. 2024) ......................................... 14

25
26
*Ollier v. Sweetwater Union High Sch. Dist.*
    768 F.3d 843 (9th Cir. 2014).............................................9, 10, 11, 13

27
28
*Parents for Priv. v. Barr*
    949 F.3d 1210 (9th Cir. 2020)................................................3, 5, 14

iii

# TABLE OF AUTHORITIES
## (continued)

                                                                                      Page

*Pennhurst State Sch. and Hosp. v. Halderman*
    451 U.S. 1 (1981) .................................................................. 3, 14, 15

*Roe v. Critchfield*
    137 F.4th 912 (9th Cir. 2025) ............................................... 3, 4, 14

*Tennessee v. Cardona*
    No. 24-5588, 2024 WL 3453880 (6th Cir. 2024).............................. 14

*Tuan Anh Nguyen v. I.N.S.*
    533 U.S. 53 (2001) ............................................................................ 8

*United States v. Skrmetti*
    145 S. Ct. 1816 (2025) ................................................................. 4, 5

*United States v. Virginia*
    518 U.S. 515 (1996) .......................................................................... 8

*Weinberger v. Wiesenfeld*
    420 U.S. 636 (1975) .......................................................................... 8

STATUTES

20 U.S.C.
    § 1681-1688 ............................................................................ 1, 3, 14
    § 1681(a) ............................................................................................ 1

California Education Code
    § 221.5(f) .................................................................................... 7, 12

REGULATIONS

34 C.F.R.
    pt. 106 ............................................................................................. 14
    § 106.2 .............................................................................................. 2
    § 106.41 ......................................................................................... 1, 3
    § 106.41(a) ........................................................................................ 2
    § 106.41(b) ............................................................................... 2, 5, 12
    § 106.41(c) ........................................................................................ 2
    § 106.41(c)(2)-(10) ......................................................................... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

1979 Policy Interpretation,

44 Fed. Reg. 71413 (Dec. 11, 1979)....................................................................9, 12

Executive Order

    No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025)...................................................3
    No. 14201, 90 Fed. Reg. 9279 (Feb. 11, 2025)..................................................3

v

1

**INTRODUCTION**

2    California is not in violation of Title IX. Contrary to Plaintiff's assertions,

3  neither Title IX's statutory text nor its implementing regulations prohibit

4  California's longstanding inclusive athletics law and policies. Even if "sex" under

5  Title IX is interpreted as "biological sex" as Plaintiff argues, nothing in Title IX or

6  its regulations *requires* sex-separated athletics and facilities or the exclusion of

7  transgender girls from girls' sports and facilities.

8    Plaintiff's lawsuit asks this Court to ignore binding Ninth Circuit precedent

9  and read into Title IX a categorial ban on the participation of all transgender girls in

10  girls' school athletics and facilities when there is no basis in law for it, and when

11  such a ban is based on overly broad generalizations and stereotypes that are

12  demeaning to women and girls. Because Plaintiff fails to state plausible facts to

13  support any Title IX violations, and because California did not have clear notice at

14  the time it accepted federal funding that Title IX prohibits its law and related

15  policies, Plaintiff's claims should be dismissed without leave to amend.

16

**ARGUMENT**

17  I.    **PLAINTIFF'S TITLE IX CLAIMS FAIL AS A MATTER OF LAW**

18       **A.    California Is Not in Violation of Title IX**

19    Title IX does not prohibit inclusive athletics policies like California's. Title IX

20  prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a). Title IX does

21  not address athletics explicitly, but regulations promulgated by the United States

22  Department of Education (and its predecessors) do. *See generally* 20 U.S.C. § 1681;

23  34 C.F.R. § 106.41. Under those regulations, "[n]o person shall, on the basis of sex,

24  be excluded from participation in . . . any interscholastic . . . athletics offered by a

25  recipient,[1] and no recipient shall provide any such athletics separately on such

26       _____

         [1] A "recipient" is defined as "any State or political subdivision thereof, or

27  any instrumentality of a State or political subdivision thereof, any public or private
    agency, institution, or organization, or other entity, or any person, to whom Federal

28  financial assistance is extended directly or through another recipient and which

                                                                    (continued…)

1

basis." 34 C.F.R. § 106.41(a). The default under Title IX, therefore, is not to separate athletics by gender.

Recipients may, however, operate "separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." *Id*. § 106.41(b). "[W]here a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport." *Id*. Schools also "shall provide equal athletic opportunity for members of both sexes." *Id*. § 106.41(c). California complies with Title IX.

### 1.    Title IX does not prohibit the inclusion of transgender girls in school-sponsored sports

Plaintiff asserts that the text and historical context of Title IX require that the term "sex" under Title IX should be interpreted as "biological sex." *See* Pl.'s Mot. to Dismiss Opp'n, ECF No. 27, at 3-6 (hereinafter "Opp."). Even if this were true, nothing in the text of Title IX or its implementing regulations mandates that transgender girls be excluded from girls' sports. *See, e.g.*, *A.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 770 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024). Thus, there is no basis under Title IX for the relief that Plaintiff seeks.

Rather, Title IX generally prohibits sex separation. While there are carve-outs for certain circumstances such as where the sport is a contact sport or where competition is based on competitive skill, the carve-outs in § 106.41(b) do not require sex-separated teams under any circumstances, and nothing in the statute or regulations prohibits the inclusion of transgender students who wish to try out for a team aligned with their gender identity. Thus, nothing in Title IX or its regulations

---

operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof." 34 C.F.R. § 106.2.

establishes that California law or practices that allow transgender girls to participate in sports teams consistent with their gender identities violates Title IX. 20 U.S.C. § 1681; 34 C.F.R. § 106.41.

Similarly, as to sex-separated facilities, "just because Title IX authorizes sex-segregated facilities" (i.e., "school bathrooms, locker rooms, and showers") "does not mean that they are required, let alone that they must be segregated based only on biological sex and cannot accommodate gender identity." *Parents for Priv. v. Barr*, 949 F.3d 1210, 1217, 1227 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 894 (2020). Therefore, arguments that center on what Congress intended with respect to the term "sex" are neither dispositive nor persuasive, as nothing in the statute *requires* a funding recipient to operate or sponsor programs segregated by Plaintiff's definition of sex. *See generally* 20 U.S.C. § 1681; 34 C.F.R. § 106.41; *see also Roe v. Critchfield*, 137 F.4th 912, 927 (9th Cir. 2025).[2]

Plaintiff asserts that President Trump's Executive Orders (the "Gender EO" and the "Sports Ban EO")[3] "provide more confirmation of Title IX's meaning and the United States' potential enforcement." Opp. 23:20-21. But these EOs cannot form the basis for Title IX enforcement. *See Clinton v. City of New York*, 524 U.S. 417, 438 (1998). As stated in the moving papers, any enforcement action based on the EOs is precluded under the Administrative Procedure Act ("APA") for failing to adhere to the notice and comment process when amending regulations, which Plaintiff does not even address in its briefing. *Compare* Defs.' Mot. to Dismiss Mem. P. & A. at 11, ECF No. 25-1, *with* Opp. (failing to address Defendants' APA arguments). Regardless, this Court is not required to accept Plaintiff's interpretation of Title IX. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024) (explaining that the judiciary has the sole prerogative to say what the law is and the

---

[2] The absence of these prohibitions in the statute further demonstrates the lack of clear notice that is required under the Spending Clause. *See Pennhurst State Sch. And Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *see also* 20 U.S.C. § 1681.
[3] Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025); Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 11, 2025).

3

final duty to interpret the law). For these reasons, Plaintiff's claims fail.

### 2. Binding Ninth Circuit law precludes Plaintiff's interpretation of Title IX

Plaintiff incorrectly asserts that California urges this Court to extend *Bostock v. Clayton County*, 590 U.S. 644 (2020), to "also include gender identity" barring "the longstanding practice of sex-separated athletics." Opp. 15. This is false. Defendants' position is that the Ninth Circuit *has already determined* that prohibited sex discrimination under Title IX encompasses discrimination on the basis of transgender status. *See* Defs.' Mot. to Dismiss Mem. P. & A., 9:7-14; *see also Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022); *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116-18 (9th Cir. 2023). Plaintiff, however, ignores this binding Ninth Circuit authority.

In *Bostock*, the Supreme Court noted that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex," and held that sex discrimination under Title VII includes gender-identity discrimination. 590 U.S. at 660. Although the Court's decision in *Bostock* applied to the Title VII context, the Ninth Circuit subsequently determined that *Bostock*'s rationale applies to Title IX. *Snyder*, 28 F.4th at 114. Thus, Ninth Circuit "precedent establishes that discrimination on the basis of transgender status is a form of sex-based discrimination." *Critchfield*, 137 F.4th at 928.

Plaintiff's reliance on *United States v. Skrmetti,* 145 S. Ct. 1816 (2025), is equally problematic. Plaintiff asserts that in *Skrmetti*, the Supreme Court "confirms that separating athletes based on sex, as Title IX requires, does not violate *Bostock*." Opp. 16:10-11. But in *Skrmetti*—which was not an athletics case but a case involving a state law ban on healthcare for minors—the Court specifically declined to consider whether *Bostock*'s reasoning applies "beyond the Title VII context." 145 S. Ct. at 1834. Thus, *Skrmetti* did not hold that Title IX precludes

4

inclusive educational programs for transgender students, nor did *Skrmetti* mandate the exclusion of transgender girls from girls' athletic programs or facilities. Further, as stated above, Title IX does not *require* sex-separated athletic teams or facilities at all. *See* 34 C.F.R. § 106.41(b); *Parents for Priv.*, 949 F.3d at 1227 (explaining that Title IX authorizes sex-segregated facilities but does not require them).

Plaintiff also mischaracterizes the holding in *Snyder* as "unnecessary dicta" and then directs this Court to out-of-circuit decisions. Opp. 17. In *Snyder*, although the court did not reach the merits of the plaintiffs' challenges, it provided express instructions to the lower court "to ensure appropriate proceedings below" because the district court's "conclusion was based on an erroneous reading of *Bostock*." *Snyder*, 28 F.4th at 113. The district court, in interpreting a provision of the Affordable Care Act which provides that "an individual shall not, on the ground prohibited under . . . Title IX," be excluded from health programs, had rejected the plaintiffs' reliance on *Bostock* due to its limitation to Title VII claims. *Id*. at 113-114. But the Ninth Circuit determined that "[a] faithful application of *Bostock* causes us to conclude that the district court's understanding of *Bostock* was too narrow," and noted that "the Supreme Court has often looked to its Title VII interpretations of discrimination in illuminating Title IX" before holding that discrimination based on "transgender status is discrimination . . . 'on the basis of sex'" under Title IX. *Id*. Plaintiff's claim that the *Skrmetti* decision "has abrogated any contrary language in *Snyder*" is wholly without merit, as the *Skrmetti* Court expressly declined to address the application of its *Bostock* decision beyond Title VII. *See* 145 S. Ct. 1816, 1834 (2025) ("We have not yet considered whether *Bostock*'s reasoning reaches beyond the Title VII context, and we need not do so here.").

Plaintiff asserts that *Doe v. Horne*, 115 F.4th 1083, 1107 (9th Cir. 2024), *petition for cert. filed*, No. 24-449, does not support Defendants' position because that decision did not address the merits of the plaintiffs' Title IX claim in that case.

5

Reply Br. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

Opp. 18. In that case, transgender students sought a declaratory judgment that Arizona's Save Women's Sports Act violated the Equal Protection Clause and Title IX. *Horne*, 115 F.4th at 1096-97. The lower court concluded that the plaintiffs were likely to succeed on both their equal protection and Title IX challenges to the transgender ban statute. *Id*. at 1097-98. The Ninth Circuit decided not to analyze the merits of the plaintiffs' Title IX claim only because the defendant was already properly enjoined based on the plaintiffs' likely success on their equal protection claim. *Id*. at 1111. The Ninth Circuit did, however, determine that categorical bans targeting transgender student athletes likely violate the Equal Protection Clause. *Id*.at 1109-10.

Plaintiff likewise tries to take aim at *Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2024), as amended (June 7, 2024), *cert. granted*, 2025 WL 1829165 (July 3, 2025), and *Grabowski*, 69 F.4th 1110. Opp. at 17-18. Defendants cite *Grabowski* only to show that *Bostock*'s rationale has been applied to Title IX by the Ninth Circuit, and that interpretations of Title VII are instructive in interpreting Title IX. 69 F.4th at 1116. As for *Hecox*, Defendants rely on it for the court's finding that it is "unlikely" that transgender women, who "represent about 0.6 percent of the general population," could "displace cisgender women from women's sports," as well as its recognition that categorical bans targeting exclusion of all transgender girls likely violate the Equal Protection Clause. 104 F.4th at 1080-83. In sum, binding Ninth Circuit authority precludes Plaintiff's interpretation of Title IX and this lawsuit.

### 3.    California law effectuates Title IX's purpose to prohibit discriminatory practices in federally funded programs

"Congress enacted Title IX to avoid using federal resources to support discriminatory practices and to provide citizens with protection against those practices." *Maxon v. Fuller Theological Seminary*, 549 F. Supp. 3d 1116, 1123 (C.D. Cal. 2020) (citing *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 286 (1998)). Title IX protects *all* students from sex-based discrimination, not just

6

cisgender girls and women. *See*, *e.g.*, *Grabowski*, 69 F.4th at 1118 (addressing sex harassment claim brought by male student). AB 1266 and CIF Bylaw 300.D are therefore *consistent with* Title IX in that they protect *all* students from sex-based discrimination. *See* Cal. Educ. Code § 221.5(f); Compl. ¶ 52.

Plaintiff argues that biological differences between the sexes justify the need for sex-separated sports and the exclusion of transgender girls from girls' sports and facilities. Opp. 6:25-26. Plaintiff claims that males and boys possess inherent "male advantage[s]" that make them athletically superior over females and "naturally give males an unfair advantage." Opp. 3:1, 7:1.

At face value, Plaintiff's theory rests on stereotypical and false assumptions that men and boys are *always* athletically superior and that *all* transgender student athletes will have an unfair advantage over cisgender girls, which is simply not accurate. *See, e.g*., *Hecox*, 104 F.4th at 1082 (recognizing that not all students assigned male at birth have a physiological advantage over cisgender women and that Idaho's categorical ban included "many students who do *not* have athletic advantages over cisgender female athletes"); *Horne*, 115 F.4th at 1094, 1097-1102 (acknowledging district court's finding that categorical ban against transgender students was overly broad). Plaintiff here seeks a similar sweeping categorical ban against all transgender girls' participation.

Further, Defendants do not challenge Title IX's carve-outs for sex-separated activities or programs nor its mandate that such sex-separated activities must be equally applied if they are offered. Thus, Plaintiff's argument that California state law and policies will "flip Title IX upside down" and render sex-separated carve-outs "meaningless" are misplaced. *See* Opp. 7:18-28, 9:20-24, 16:25-17:2. Transgender inclusion means only that transgender students participate in sex-separated programs alongside their peers, not that schools must do away with sex-separated programs or facilities altogether. *See* Cal. Educ. Code § 221.5(f).

7

Reply Br. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

Plaintiff points to older decisions where sex-based classifications were deemed justified. Opp. 8:1-3. For example, Plaintiff cites *United States v. Virginia*, 518 U.S. 515 (1996) ("*VMI*"), which recognized differences between men and women in the context of military training. What Plaintiff fails to acknowledge, however, is the Court's ultimate holding that the male-only admissions policy violated the equal protection rights of women who desired admission to Virginia's public military program irrespective of those differences. *Id.* at 519-20, 549-50. Further, that case is *not* a Title IX case, and nothing in *VMI*'s holding mandates the exclusion of transgender girls in girls' interscholastic sports programs or facilities. Notably too, the Court stated that "generalizations about 'the way women are,' [and] estimates of what is appropriate for most women, no longer justify denying opportunity to women whose talent and capacity place them outside the average description," thereby reinforcing the reality that polices based on stereotypes about sex likely violate constitutional protections for equal protection under the law. *Id.* at 550.[4]

Next, Plaintiff cites *Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126 (9th Cir. 1982) ("*Clark I*") and *Clark v. Ariz. Interscholastic Ass'n*, 886 F.2d 1191 (9th Cir. 1989) ("*Clark II*"). But *Clark I* and *II* did not involve a transgender student; rather, the plaintiff in *Clark I* and *II* was a cisgender male student who sought to play on the girls' volleyball team. *Id.* at 1127. And Ninth Circuit cases since *Clark I* and *II* have distinguished *Clark*'s holding from cases involving transgender student athletes' participation in interscholastic athletics. *See Horne*, 115 F.4th at 1108; *cf. Hecox*, 104 F.4th at 1082-83. Further, such fear or speculation about potential "displacement" of cisgender girls in athletics programs has been rejected by the

_____

[4] Plaintiff's other cited cases are distinguishable in that they do not involve Title IX or Title IX athletics. *See, e.g.*, *Michael M. v. Super. Ct. of Sonoma Cnty.*, 450 U.S. 464 (1981) (statutory rape law); *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53 (2001) (citizenship and proof of parenthood); *Craig v. Boren*, 429 U.S. 190 (1976) (age restrictions for alcohol purchases); *Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975) (survivor benefits under Social Security Act).

8

Reply Br. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

Ninth Circuit. *See, e.g.*, *Hecox*, 104 F.4th at 1086 ("A vague, unsubstantiated concern that transgender women might one day dominate women's athletics is insufficient" to justify a categorical ban on their participation in school sports); *Horne*, 115 F.4th at 1108 (finding no evidence that "tiny number" of transgender girls playing on girls' teams could "displace cisgender females to a substantial extent"). Here, the complaint pleads only isolated examples where cisgender girls placed behind transgender girls which, as addressed more fully below, fails to rise to the level of actionable disparity under Title IX. For each of these reasons, Plaintiff's claims are subject to dismissal.

Finally, Plaintiff claims Defendants' inclusion of transgender students is an attempt to institute "preferential accommodation" for gender identity. Opp. 12:10-14, citing *Doe 2 v. Shahahan*, 917 F.3d 694 (D.C. Cir. 2019). *Doe 2* involved a government policy that banned certain transgender persons from serving in the military. *Id*. at 696-700. The court did not, however, reach the merits of the case, having found only that the district court's denial of a motion to dissolve a preliminary injunction was in error. *Id*. at 695-96. That case is not relevant to this Title IX athletics case, as there is no holding in *Doe 2* prohibiting the inclusion of transgender student athletes in educational programs and activities, and Plaintiff's claim of "preferential accommodation" lacks both legal and factual support.[5]

In sum, Plaintiff's claim that California is violating Title IX fails and should be dismissed.

**B.  Plaintiff Fails to Plead Facts to Establish Title IX Claims**

The Ninth Circuit evaluates "effective accommodation" claims under the three-part test drawn from the 1979 Policy Interpretation. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 854 (9th Cir. 2014) (quoting 44 Fed. Reg. at 71418); *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 965 (9th Cir. 2010);

---

[5] Plaintiff cites the concurring opinion of a single judge who does not use the term "preferential accommodation." *Compare* Opp. 12:12-14, *with Doe 2*, 971 F.3d at 707.

9

Reply Br. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

*Neal v. Bd. of Trs.*, 198 F.3d 763, 767-68 (9th Cir. 1999). Under the test, a school's athletic program must satisfy any one of the following conditions: (1) "participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments"; or, if there is not substantial proportionality, (2) "the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of [the underrepresented] sex"; or, if there is neither substantial proportionality nor ongoing program expansion, (3) "the interests and abilities of the members of [the underrepresented] sex have been fully and effectively accommodated by the present program." *Ollier*, 768 F.3d at 854.

Plaintiff does not dispute the Ninth Circuit's adoption of the three-part test for effective accommodation claims. Instead, Plaintiff asks this Court—without citing any legal authority—to ignore these well-established legal standards altogether or apply them in ways that make no logical sense. Opp. 19, 20. At the same time, Plaintiff also fails to allege facts to plead effective accommodation or equal treatment claims, or any overall compliance violation under Title IX.

### 1. Plaintiff fails to allege a valid effective accommodation or equal treatment claim

Despite pleading an "effective accommodation" claim, Opp. 20:21-22 (citing Compl. ¶¶ 90-97), Plaintiff now switches course and argues that the standards for effective accommodation are "inapplicable" to Plaintiff's claim because they "concern potential inequalities in *properly sex-separated* athletic programs." Opp. 19:8, 13, 14-15. Plaintiff now claims that an "*improper separation* of the sexes" renders the three-part test inapplicable to Plaintiff's claim. Opp. 19:20-22. Plaintiff cites no legal authority for this novel theory. Not only are such arguments unpersuasive and unsupported by any legal authority, they also are inconsistent with the allegations in Plaintiff's complaint. Compl. ¶¶ 90-95.

In addition, Plaintiff's complaint does not plead any plausible facts that could

10

1   support an effective accommodation claim against Defendants (even assuming
2   participation of cisgender girls is properly compared against that of transgender
3   girls under such a theory). There are no allegations that, for any school in
4   California, the percentage of cisgender girls enrolled in that school is substantially
5   disproportionate to the percentage of cisgender girls in that school's athletic
6   programs at a program-wide level, or that cisgender girls are underrepresented in
7   school athletics at a program-wide level. Thus, Plaintiff has not sufficiently pleaded
8   an effective accommodation claim. *See, e.g.*, *Ollier*, 768 F.3d at 855-57 (conducting
9   substantial proportionality analysis). *See generally* Compl. (failing to allege
10  requisite facts).

11      Plaintiff's conclusory allegation that the inclusion of transgender girls in girls'
12  sports reduces "athletic opportunities" for cisgender girls, *see* Compl. ¶ 95, also
13  fails to satisfy the effective accommodation test. The complaint only alleges five
14  transgender girls, at five different schools, participating in sports programs across a
15  state with millions of students. As stated, these allegations fall far short of the
16  required showing of substantial disproportionality, and it is simply not plausible
17  that a single transgender student athlete at any one school has created, or could
18  create, any substantial disproportionality in interscholastic athletics. *See Ollier*, 768
19  F.3d at 855-57. Plaintiff has not pleaded any facts of that nature in the complaint
20  nor pointed them out in its opposition brief. Thus, the effective accommodation
21  claim fails.

22      Likewise, Plaintiff alleges no facts that would establish unequal treatment
23  regarding the availability, quality, and kinds of athletic benefits and opportunities
24  provided to males and females, such as "schedules, equipment, coaching, and other
25  factors." *Mansourian*, 602 F.3d at 964-65 (citing 34 C.F.R. § 106.41(c)(2)-(10)).
26  Plaintiff cites *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025), arguing
27  that the equal treatment claim factors are "non-exhaustive" and should not be
28  limited to those factors set forth in section 106.41(c)(2)-(10) of the regulations.

11

1    Opp. 20:3-13. However, *Ames*, which is a Title VII case, concerns whether

2    Title VII's disparate treatment provision draws any distinction between majority-

3    group plaintiffs and minority-group plaintiffs, which is not relevant here. *Ames*, 605

4    U.S. at 310-11. *Ames* is therefore not applicable.

5        Next, Plaintiff claims, with no legal authority, that the five examples of

6    transgender girls participating in girls' sports alleged in the complaint have

7    transformed the sports those transgender girls played into "co-ed" sports that "can

8    no longer count as 'female'" for purposes of evaluating Plaintiff's equal treatment

9    claim. Opp. 21:2-3. But the regulation that provides for "try-out[s]" for a sex-

10    separated sports team by members of the other sex do not render such teams "co-

11    ed" should such students try out and make the team. *See* 34 C.F.R. § 106.41(b). In

12    addition, the complaint does not contain any allegations supporting this theory and

13    this unsupported theory therefore should be rejected.

14        Overall, Plaintiff points to no plausible facts that would establish any valid

15    effective accommodation or equal treatment claim. Thus, Plaintiff's claims for

16    violation of Title IX based on "effective accommodation" and "equal treatment"

17    fail.

18
19        **2.    There are no plausible facts to prove a Title IX violation based on policy guidance**

20        Plaintiff repeats the conclusory argument that CIF Bylaw 300.D and

21    California Education Code section 221.5(f) are "discriminatory in language or

22    effect." Opp. 20:16-17 (citing 1979 Policy Interpretation, 44 Fed. Reg. at 71417-

23    18). Yet, Plaintiff does not identify any discriminatory language in either, and

24    cannot do so, because Bylaw 300.D and section 221.5(f) are not facially

25    discriminatory—they are gender-neutral and applicable to all students.

26        As for a discriminatory effect, the complaint lacks sufficient factual

27    allegations to suggest there are "substantial and unjustified" disparities limiting

28    girls' access to interscholastic athletic opportunities in California. Plaintiff makes

12

the conclusory allegation that girls are "den[ied] equal educational opportunities," Compl. ¶ 10, but fails to allege any plausible facts that would demonstrate substantial and unjustified disparities that effectively deny equal athletic opportunity for members of both sexes. *See, e.g.*, *Horne*, 115 F.4th at 1108 (finding no evidence that "tiny number" of transgender girls playing on girls' teams could "displace cisgender females to a substantial extent"); *cf. B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 560 (4th Cir. 2024) (determining, for purposes of equal protection, that no governmental interest exists "in ensuring that cisgender girls do not lose ever to transgender girls"), *cert. granted*, 2025 WL 1829164 (July 3, 2025). It simply is not plausible that the small number of transgender student athletes would create disparities of the level sufficient to constitute Title IX violations.

Further, Plaintiff cannot plead a cognizable Title IX claim by selectively alleging instances in which a transgender girl placed ahead of a cisgender girl. *See* Compl. ¶¶ 65-85. Even while Plaintiff relies on the false assumption that transgender girls are always physically advantaged compared to cisgender girls, *e.g.*, *id.* ¶¶ 7-8, the complaint lists numerous examples of cisgender girls outperforming transgender girls, *id.* ¶¶ 66, 69, 70, 76, 79, 82-83 (alleging second-, third-, fourth-, and fifth-place rankings of transgender girls). Thus, both the 1979 Policy Interpretation and Plaintiff's own allegations defeat Plaintiff's Title IX claims.

In sum, Plaintiff has not plausibly alleged any facts showing that the inclusion of transgender girls in girls' sports violates Title IX, and Plaintiff's claims are thus subject to dismissal.[6]

///

///

---

[6] In footnote 9 of the Opposition, Plaintiff concedes that it does not assert a Title IX retaliation claim against Defendants. Further, because there are no facts alleged that would establish retaliatory conduct by Defendants, any alleged Title IX retaliation claim against Defendants fails as a matter of law. *Cf., e.g.*, *Ollier*, 768 F.3d at 867.

13

1    **II.    THE SPENDING CLAUSE PRECLUDES THIS LAWSUIT**

2        Plaintiff's claims are also barred by the Spending Clause of the U.S.

3    Constitution, because neither CDE nor CIF had clear notice that Title IX

4    unambiguously requires the exclusion of transgender girls from girls' sports and

5    facilities. *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).[7]

6    Plaintiff agrees that "when Congress attaches conditions to recipient's acceptance

7    of federal funds, the conditions must be set out unambiguously." Opp. 21:18-22

8    (citing *Critchfield*, 137 F.4th at 928-29). Plaintiff incorrectly argues that the plain

9    language of Title IX, out-of-circuit decisions, and the two executive orders that

10    postdate CDE's acceptance of funding conditions provided such notice. Opp. 21.

11        As stated above, the statutory text of Title IX does not mandate the prohibition

12    of transgender girls from participation in girls' athletics and facilities, nor does it

13    define "sex" in the manner Plaintiff urges. Thus, nothing in the text of Title IX

14    itself provides the unambiguous and clear notice that is required by the Spending

15    Clause. *See generally* 20 U.S.C. §§ 1681-1688; 34 C.F.R. pt. 106.

16        The relevant legal landscape also does not provide sufficient notice to

17    Defendants. In an attempt to argue that CDE has notice, Plaintiff cites out-of-circuit

18    federal-court decisions that enjoined the prior administration's rule changes under

19    Title IX. Opp. 22 n.10 (citing *Tennessee v. Cardona*, No. 24-5588, 2024 WL

20    3453880 (6th Cir. 2024); *Louisiana v. Dep't of Educ.*, No. 24-30399, 2024 WL

21    3452887 (5th Cir. 2024); and *Oklahoma v. Cardona*, 743 F. Supp. 3d 1314 (W.D.

22    Okla. 2024)). However, none of those cases held, or even suggested, that allowing

23    students to participate in school sports in accordance with their gender identity is a

24    violation of Title IX, and as explained previously, *binding* Ninth Circuit authority

25    conflicts with the cases Plaintiff relies upon. *See, e.g.*, *Snyder*, 28 F.4th at 113-14;

26    *Parents for Priv.*, 949 F.3d at 1217, 1227-29; *Hecox*, 104 F.4th at 1080-81; *Horne*,

27    115 F.4th at 1109-10. Moreover, other circuits have rejected Plaintiff's

28    _____
[7] CIF does not receive federal funding. *Cf.* Compl. ¶¶ 13-17.

14

interpretation of Title IX. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 619-20 (4th Cir. 2020); *B.P.J.*, 98 F.4th at 562-64; *A.C.*, 75 F.4th at 769. Accordingly, these facts demonstrate that—at the time it accepted federal funds— CDE would not have clearly understood that Title IX prohibits the inclusion of transgender girls in girls' athletics and facilities, or that California law violates Title IX. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006); *see also City of Los Angeles v. Barr*, 929 F.3d 1163, 1174 (9th Cir. 2019).

Finally, the executive orders—each of which postdate CDE's assurance on November 20, 2024, *see* Compl. ¶ 38—also cannot form the basis for notice, since they were not in existence at the time of the assurance, and because only Congress has the power to impose conditions on funds. *See Penhurst*, 451 U.S. at 25 (noting that Congress's power to place conditions on federal funds "does not include . . . 'retroactive' conditions"); *Arlington*, 548 U.S. at 296 ("States cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'").[8] Because there has been no clear and unambiguous notice that Title IX precludes transgender girls from participating in girls' sports, and because funding conditions cannot be retroactively imposed (by an executive order or otherwise), Plaintiff's claims are subject to dismissal.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed with prejudice.

---

[8] Plaintiff's citation of *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) is misplaced. Defendants do not challenge any decision not to take enforcement action earlier. Rather, the lack of agency enforcement action in the over twelve years since enactment of the state law supports the argument that there could not possibly have been clear and unambiguous notice to CDE, since the United States Department of Education has never previously taken issue with these long-standing laws and practices in California.

15

Reply Br. in Supp. of Defs.' Joint Mot. to Dismiss (Case No. 8:25-cv-01485-CV-JDE)

1    Dated:  October 3, 2025                    Respectfully submitted,

2                                               ROB BONTA
                                               Attorney General of California
3                                               DARRELL W. SPENCE
                                               Supervising Deputy Attorney General
4                                               JONATHAN BENNER
                                               STACEY LEASK
5                                               ANTHONY PINGGERA
                                               Deputy Attorneys General
6

7
                                               /s/ Stacey Leask
8                                               STACEY L. LEASK (SBN 233281)
                                               Deputy Attorney General
9                                               *Attorneys for Defendant Department
                                               of Education*
10   Dated:  October 3, 2025                    SPINELLI, DONALD & NOTT

11

12
                                               /s/ J. Scott Donald
13                                              J. SCOTT DONALD (SBN 158338)
                                               *Attorney for Defendant California
14                                              Interscholastic Federation*

15

16                        **FILER'S ATTESTATION**

17        Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed,

18   and on whose behalf the filing is submitted, concur in the filing's content and have

19   authorized this filing.

20
     Dated:  October 3, 2025                    /s/ Stacey Leask
21                                              STACEY L. LEASK
                                               Deputy Attorney General
22                                              *Attorney for Defendant California
                                               Department of Education*
23

24

25

26

27

28

                                   16

1

<b>CERTIFICATE OF COMPLIANCE</b>

2    The undersigned, counsel of record for Defendant California Department of

3  Education, certifies that this brief contains 4,955 words, which complies with the

4  word limit of L.R. 11-6.1.

5  Dated:  October 3, 2025        Respectfully submitted,

6                               ROB BONTA

7                               Attorney General of California

8

9                              /s/ Stacey Leask

10                           STACEY L. LEASK
Deputy Attorney General
*Attorneys for Defendant California Department of Education*

11-28

# CERTIFICATE OF SERVICE

Case Name:   **USA v CIF and CDE**                    No.    **8:25-cv-01485**

I hereby certify that on <u>October 3, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 3, 2025</u>, at San Francisco, California.

|                   |                    |
|-------------------|--------------------|
| R. Caoile         | */s/ R. Caoile*    |
| Declarant         | Signature          |

SA2025304027
44820743.docx