ROB BONTA
Attorney General of California
DARRELL W. SPENCE (SBN 248011)
Supervising Deputy Attorney General
JONATHAN BENNER (SBN 318956)
STACEY LEASK (SBN 233281)
ANTHONY PINGGERA (SBN 320206)
EDWARD NUGENT (SBN 330479)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 229-0113
  Fax:  (415) 703-5843
  E-mail:  Edward.Nugent@doj.ca.gov
*Attorneys for Defendant California
Department of Education*

J. SCOTT DONALD (SBN 158338)
SPINELLI, DONALD & NOTT
  300 University Avenue, Suite 100
  Sacramento, CA  95825-6518
  Telephone: (916) 448-7888
  Fax: (916) 448-6888
  E-mail:  ScottD@SDNLaw.com
*Attorney for Defendant California
Interscholastic Federation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**CALIFORNIA INTERSCHOLASTIC FEDERATION and CALIFORNIA DEPARTMENT OF EDUCATION,**<br><br>Defendants. | Case No. 8:25-cv-01485-CV-JDE<br><br>**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Date:        N/A<br>Time:        N/A<br>Courtroom:   10B<br>Judge:       Hon. Cynthia Valenzuela<br>Trial Date:  Not yet set<br>Action Filed: July 9, 2025 |

**TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:**

Defendants California Department of Education and California Interscholastic Federation hereby submit this Notice of Supplemental Authority to the Court. On April 15, 2026, the U.S. Court of Appeals for the Eighth Circuit issued an opinion in *Female Athletes United v. Ellison*, No. 25-2899. The unanimous panel affirmed the denial of a preliminary injunction sought by a private organization to prohibit transgender girls from competing in girls' school sports, holding that the organization "lacks a private right of action to bring its Title IX claims." *See* slip op. at 1-2. In its analysis, the panel rejected the argument that there is a "strong likelihood" that the participation of a transgender girl on a girls' softball team "violates Title IX or its implementing regulations." *See* slip op. at 11-12. The panel observed that, while "executive guidance and federal agency findings" have asserted "that male participation in all-female athletics violates Title IX," those findings "do not reflect settled law." *Id*. The panel concluded that "whether Title IX requires, permits, or prohibits the participation of transgender athletes in female athletics remains an open question of law." *Id.* at 12.

The opinion is submitted in support of Defendants' Joint Motion to Dismiss, Dkt. No. 25. It is relevant to this Court's consideration of the motion because it provides further grounds for dismissal under the Spending Clause. While Defendants maintain that Title IX, at a minimum, *permits* school sports to accommodate students' gender identity, *e.g.*, *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 610-11 (6th Cir. 2024), the Eighth Circuit's view of Title IX further demonstrates that Defendants did not have, and could not have had, clear and unambiguous notice of the funding condition Plaintiff now seeks to impose.

A true and correct copy of the *Ellison* opinion is attached hereto as **Exhibit 1**.

1

Dated:  April 22, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
JONATHAN BENNER
STACEY LEASK
ANTHONY PINGGERA
Deputy Attorneys General


/s/ Edward Nugent
EDWARD NUGENT (SBN 330479)
Deputy Attorney General
*Attorneys for Defendant California Department of Education*

SPINELLI, DONALD & NOTT


/s/ J. Scott Donald
J. SCOTT DONALD (SBN 158338)
*Attorney for Defendant California Interscholastic Federation*


## FILER'S ATTESTATION

Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  April 22, 2026

/s/ Edward Nugent
EDWARD NUGENT
Deputy Attorney General
*Attorney for Defendant California Department of Education*

2

# EXHIBIT 1

# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 25-2899

———————————————

Female Athletes United

*Plaintiff - Appellant*

v.

Keith M. Ellison, in his official capacity as Attorney General of Minnesota; Rebecca Lucero, in her official capacity as Commissioner of the Minnesota Commission on Civil Rights; Erich Martens, in his official capacity as Executive Director of the Minnesota State High School League; Willie Jett, in his official capacity as the Minnesota Commissioner of Education; Independent School District No. 11, School Board; Independent School District No. 192, School Board; Independent School District No. 279, School Board

*Defendants - Appellees*

------------------------------

State of Iowa; State of Alabama; State of Alaska; State of Arkansas; State of Florida; State of Georgia; State of Indiana; State of Kansas; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of Nebraska; State of Oklahoma; State of South Carolina; State of South Dakota; State of Texas; State of Utah; State of Wyoming; Independent Council on Women's Sports; Sport Scientists; State of North Dakota; State of Tennessee; Mark Regnerus

*Amici on Behalf of Appellant(s)*

State of Washington; State of California; State of Connecticut; State of Hawaii; State of Illinois; State of Maine; State of Maryland; State of Massachusetts; State of Nevada; State of New York; State of Oregon; State of Rhode Island; State of Vermont; National Women's Law Center; American Federation of Teachers; Clearinghouse on Women's Issues; Feminist Majority Foundation; GLSEN;

Jewish Community Action; Minnesota Abortion Action Committee; National Association of School Psychologists; National Association of Women Lawyers; National Council of Jewish Women; National Education Association; National Organization for Women Foundation; OutNebraska; PFLAG, Inc.; PROMO; Public Counsel; Red River Women's Clinic; The Trevor Project; Women's Foundation of Minnesota; Women's Law Project; American Civil Liberties Union; American Civil Liberties Union of Minnesota; Gender Justice; Information Society Project; Andraya Yearwood

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: January 15, 2026
Filed: April 15, 2026

_____

Before GRUENDER, ERICKSON, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.


Jane Doe is a biological male who has identified as a transgender girl since at least the age of ten.  Now a high-school senior, Doe captains a varsity girls' softball team which competes in the Minnesota State High School League (the "League"), a voluntary association of high schools that administers student athletic activities.  The League permits Doe to participate in all-girls' softball pursuant to a 2016 bylaw that allows students to participate in athletics or fine arts activities in a manner "consistent with their gender identity or expression" (hereafter, the "Bylaw").  Doe has been a key contributor to the varsity team's success; last season, Doe led the team to a state championship after pitching every inning of its final five playoff games.  Doe intends to play for the team in the upcoming League season and help it achieve similar success.

On May 19, 2025, Appellant Female Athletes United ("FAU"), a non-profit organization founded "for the purpose of defending women's sports," sued various Minnesota officials and the boards of three independent school districts under Title IX of the Education Amendments of 1972 in the district court,[1] alleging that they had violated its members' rights to effective accommodation and equal treatment by allowing Doe to compete in varsity girls' softball. The next day, FAU moved for a preliminary injunction preventing the defendants from permitting "male athletes to compete with or against" any current or future FAU members in "contact sports or sports involving competitive athletic skill." The district court concluded that FAU had standing to seek its proposed injunction but denied its motion because FAU lacked a private right of action to pursue its Title IX claims and because, regardless, FAU failed to meet the requirements for preliminary injunctive relief. *See Dataphase Sys., Inc. v. C L Sys., Inc,* 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Because we agree that FAU lacks a private right of action to bring its Title IX claims, we affirm.

## I.  Background

In February 2016, the League adopted Bylaw 300.00(3), which includes the following provision:

> In accordance with applicable state and federal laws, rules and regulations, the [League] allows participation for all students consistent with their gender identity or expression in an environment free from discrimination with an equal opportunity for participation in athletics and fine arts.

§ 300.00(3)(A).  The parties agree that the Bylaw mandates that member schools allow transgender students to participate on school athletic teams based on "their gender identity and expression."

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

Doe began playing varsity girls' softball as a freshman midway through the 2023 League season.  As a sophomore, Doe pitched two-thirds of the varsity team's innings and received All-State honors.  Before the 2025 season, however, President Donald Trump promulgated an Executive Order directing that the Secretary of Education "prioritize Title IX enforcement actions against educational institutions (including athletic associations composed of or governed by such institutions)" that deny female students "equal opportunity" by "requiring them, in the women's category, to compete with or against . . . males."  *See* Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025).  The next day, the League announced it would continue to let students participate in athletic activities consistent with their gender identity in accordance with Minnesota law.  One week later, the Department of Education's Office for Civil Rights ("OCR") announced that it was opening an investigation into the League for potential Title IX violations based on the "possibility" that it was allowing male athletes to compete in women's sports.

In response, the League's Executive Director, Erich Martens, sought guidance from Minnesota's Attorney General, Keith Ellison, on whether the President's interpretation of Title IX conflicted with and superseded the requirements of the Minnesota Human Rights Act (MHRA), which prohibits "discriminat[ion] in any manner in the full utilization of or benefit from any educational institution . . . because of . . . gender identity[.]"  *See* Minn. Stat. § 363A.13, subd. 1.  On February 20, 2025, Attorney General Ellison issued a formal legal opinion instructing the League that it "would violate the MHRA by prohibiting transgender athletes from participating in extracurricular activities according to their gender identity," and that it need not adhere to the President's view of Title IX because the "Executive Order does not have the force of law and therefore does not preempt any aspect of Minnesota law."  Five days later, then-United States Attorney General Pamela Bondi issued a letter to Attorney General Ellison and Executive Director Martens that rejected the former's legal analysis, noted OCR's investigation into the League, and emphasized that "[r]equiring girls to compete against boys in sports and athletic events violates Title IX."

Against this backdrop, the League permitted Doe to play varsity girls' softball during the 2025 season.  On May 19, 2025, FAU sued Attorney General Ellison, Executive Director Martens, two other state officials, and the boards of three independent school districts (the "Appellees")[2] under Title IX, alleging that their enforcement of the Bylaw—by permitting Doe to compete—had deprived four of FAU's female members of "an equal opportunity to participate" in girls' softball and caused several "harm[s]" and "discriminatory . . . impact[s]," including reduced performance, lost games and awards, lower visibility to recruiters, emotional distress, and, in one instance, physical pain caused by one of Doe's pitches.  FAU further alleged that the Appellees had allowed Doe to compete against these members in League games notwithstanding these "known negative impact[s]" and the federal government's guidance that doing so would violate Title IX. Accordingly, FAU brought claims of ineffective accommodation and unequal treatment under Title IX's implementing regulations, *see* 34 C.F.R. §§ 106.41(c), which FAU characterized as precluding "policies that are discriminatory in language or effect or have the effect of denying equality of opportunity."

The next day, FAU moved for a preliminary injunction prohibiting, in part, "male athletes [from] compet[ing] with or against female-athlete members of [FAU] in sports designated for women or girls that are contact sports or sports involving competitive athletic skill."  FAU argued that its proposed injunction was appropriate because four of its members played for varsity girls' softball teams likely to face Doe's team during the 2026 season and therefore, they were likely to compete against Doe in violation of their rights under Title IX.  These four members filed declarations in support of FAU's motion that asserted a likelihood of facing Doe and suffering injuries like those alleged in FAU's complaint.  Notably, however, only one of the members, "Athlete 1," stated that she played for a team scheduled to face Doe's team in the League's regular season.  The other three members based their assertions of future injury on the likelihood that their teams would compete against

---

[2]Where necessary, we refer to the state officials collectively as the "State Appellees" and the school boards as the "School Appellees."

- 4 -

Doe in the post-season state tournament or in not-yet-scheduled tournaments distinct from regular-season play.  Doe filed a declaration in opposition to FAU's motion, noting an intention to play in the upcoming League season and disputing, among other things, the extent to which Doe's abilities exceeded those of high-performing female players on Doe's team.  The parties also filed voluminous expert reports documenting and weighing Doe's biological advantages vis-à-vis her female counterparts.

After concluding that FAU had standing in light of the scheduled game between Athlete 1's and Doe's teams, the district court denied FAU's motion for a preliminary injunction on two independent grounds.  First, the district court concluded that FAU lacked a fair chance of succeeding on the merits because its ineffective accommodation and equal treatment claims were based on a "disparate-impact theory" for which Title IX does not supply a private right of action.  Second, assuming otherwise, the district court rejected FAU's motion on the basis that it had failed to establish that any of the relevant factors supported the issuance of its proposed injunction.  *See Dataphase Sys., Inc.*, 640 F.2d at 113 ("Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.").

FAU appeals, arguing that the district court erred in concluding that Title IX does not supply a private right of action for its claims and in otherwise rejecting its motion for a preliminary injunction.  In response, the State Appellees argue that the district court erred in determining that FAU has standing to pursue preliminary injunctive relief but otherwise defend the court's ruling alongside the School Appellees.[3]  On November 5, 2025, we denied FAU's motion for an injunction

---

[3]During the pendency of this appeal, the federal Departments of Education and Health and Human Services issued a Letter of Findings (the "Letter") to several Minnesota officials, including some of the State Appellees, declaring that the League and Minnesota's Department of Education are "not compliant with Title IX and its

pending appeal as well as the Appellees' motion to hold this case in abeyance pending the Supreme Court's decisions in *West Virginia, et al. v. B.P.J.*, No. 24-43 (argued Jan. 13, 2026) and *Little, et al. v. Hecox, et al.*, No. 24-38 (argued Jan. 13, 2026), which concern challenges under the Equal Protection Clause and Title IX to state laws requiring that schools separate girls' and boys' sports teams by biological sex.

## II. Discussion

### A.

We address *de novo* the State Appellees' argument that FAU lacks standing to seek preliminary injunctive relief. To invoke standing as a representative of its members, FAU must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). The district court concluded that FAU had met this burden because one of its members, Athlete 1, had standing in her own right to pursue a preliminary injunction and it was "reasonably clear" that FAU met the other two representational

---

implementing regulations." The Letter cited Doe's participation in girls' varsity softball as its first "Specific Example[] of Sex Discrimination in Minnesota Educational Programs or Activities" and characterized the state's alleged failure to comply with Title IX as "intentional" because it had continued to permit males to participate in all-female athletics after receiving contrary "guidance and warnings from federal officials." Accompanying the Letter was a proposed resolution agreement requiring, in part, that the League rescind or revise any guidance permitting males to compete in girls' sports or face a referral to the Department of Justice and/or the recission of federal funds from member schools. To date, however, it is our understanding that the League has not taken steps to rescind the Bylaw.

standing requirements.[4] *See Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013) (holding an association "need not establish that all of its members would have standing to sue individually so long as it can show that any one of them would have standing" (citation modified)). The State Appellees dispute Athlete 1's standing, arguing that FAU has failed to demonstrate that she is likely to suffer an injury in fact due to their enforcement of the Bylaw.

To assess that argument, we consider whether FAU has made a "clear showing" that Athlete 1 is "likely to establish" that she "will suffer an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *See Murthy v. Missouri*, 603 U.S. 43, 57 (2024). Because the parties have introduced evidence, "[FAU] cannot rest on mere allegations, but must instead point to factual evidence" in support of Athlete 1's standing. *Id.* at 58 (citation modified). That said, we assume for standing purposes that Athlete 1 would be successful on the merits of FAU's Title IX claims if she brought them in her own right. *See Am. Farm Bureau Fed'n v. E.P.A.*, 836 F.3d 963, 968 (8th Cir. 2016).

Applying these standards, we agree with the district court that Athlete 1 has standing to pursue a preliminary injunction. First, a game between Athlete 1's and Doe's teams is likely to occur because the League has scheduled a game between them to take place this season. Second, the record supports that Athlete 1 and Doe are likely to compete against one another in that game. The State Appellees do not dispute that Doe pitched most of the team's regular season innings and in every game against Athlete 1's team in 2024 and 2025. Nor do they dispute that Athlete 1 is likely to play in that game given she is a senior with two years of varsity experience. As such, the State Appellees' contention that competition between Athlete 1 and Doe is contingent on factors beyond their control, such as remaining healthy and making their teams' rosters, does not negate the clear evidence of likely injury. *See*

---

[4]The district court concluded that Athletes 2, 3 and 4 lack standing to seek a preliminary injunction. Because we affirm the district court's analysis of Athlete 1's standing, we need not address that conclusion.

*Murthy*, 603 U.S. at 59 (noting past injuries are "relevant . . . for their predictive value"). Lastly, assuming, as we must, that Doe's participation in that game would violate Athlete 1's rights to effective accommodation and equal treatment under Title IX, we cannot accept the State Appellees' argument that Athlete 1's anticipated injuries are as or more likely to result from factors beyond Doe's biological advantages.

Therefore, because FAU has made a clear showing that one of its members has standing and clearly meets the other two requirements for representational standing, we conclude that FAU has standing to pursue its proposed preliminary injunction.

B.

We review *de novo* the district court's determination that, because Title IX does not supply a private right of action for its claims, FAU lacked a fair chance of success on the merits.[5] *See Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204, 1208 (8th Cir. 2023). We have not previously defined the scope of the private right of action conferred by Title IX. In line with several of our sister circuits that have reached the issue, the district court held that a private plaintiff may only bring claims of intentional discrimination under Title IX. *See, e.g.*, *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 75 (1st Cir. 2019); *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 240 (6th Cir. 2019); *Poloceno v. Dall. Indep. Sch. Dist.*, 826 F. App'x 359, 363 (5th Cir. 2020) (unpublished).

---

[5]Appellees argue that FAU must show not merely a fair chance of success, but that it is "likely to prevail" on the merits because its challenge to the Bylaw is "effectively a challenge to the MHRA." *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 733 (8th Cir. 2008) (en banc) (noting that a plaintiff seeking a preliminary injunction "that thwart[s] a state's presumptively reasonable democratic processes" must meet a more rigorous "likely to prevail" standard). We need not resolve the issue because FAU cannot meet the more lenient "fair chance" standard in the absence of a private right of action.

- 8 -

We agree.[6]  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The statute also authorizes each "Federal department and agency" to "issu[e] rules, regulations, or orders of general applicability . . . consistent with achievement of [its] objectives."  *Id.* § 1682.  The Supreme Court has instructed that we must interpret and apply these provisions as we would the analogous provisions of Title VI of the Civil Rights Act of 1964.  *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 694-96 (1979) ("Except for the substitution of the word sex in Title IX to replace the words race, color, or national origin in Title VI, the two statutes use identical language to describe the benefitted class . . . The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years.").  Two decades later, the Court set forth that Title VI's anti-discrimination provision supplies a private right of action only for claims of intentional discrimination and its language authorizing implementing regulations "reveals no congressional intent to create a private right of action" to enforce them.  *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001).  Therefore, given the Court's guidance in *Cannon*, we are bound to conclude that *Sandoval* stands for the proposition that Title IX affords a private right of action only for claims of intentional sex discrimination.

Accordingly, FAU's private right of action appeal hinges on whether its claims of ineffective accommodation and unequal treatment are claims of intentional discrimination or of disparate impact.  The district court determined that FAU's complaint only "asserts disparate-impact theories"—for which Title IX does not provide a private right of action—and consequently rejected FAU's motion for a preliminary injunction.  FAU contends this was a reversible error.  We disagree.

---

[6]As does FAU.  At oral argument, contrary to certain arguments raised in its opening brief, FAU stated that "we don't contest that there is no disparate impact claim under Title IX."

FAU first asserts that the district court simply misclassified its claims of intentional discrimination as claims of disparate impact.  In the Title IX context, intentional sex discrimination occurs whenever a defendant treats persons less favorably "because" of their sex.  *Wells ex rel. Glover v. Creigton Preparatory Sch.*, 82 F.4th 586, 592-93 (8th Cir. 2023).  A defendant need not have intended to violate Title IX or acted out of animus, but "need only have intended to treat women differently."  *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 881 (5th Cir. 2000).  In contrast, a disparate impact claim arises when a defendant adopts policies or practices "that are facially neutral in their treatment of different groups but that in fact fall more harshly on [one sex] than another."  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).  FAU argues that it has brought claims of intentional discrimination because it has alleged that the Bylaw reflects disparate treatment, specifically a "sex-based choice to allow males on exclusively female teams."  Like the district court, however, we struggle to find allegations of that sort in its pleadings.  FAU's complaint not only concedes the Bylaw's facial neutrality—"the [Bylaw] does not take into account the student's biology or any physiological attributes"—but also disclaims that it reflected a sex-based choice—"at no point prior to [the] adoption of the [Bylaw] did the [League], or any of the Defendant Schools take into consideration whether the [Bylaw] provided equal opportunity or effectively accommodated female athletes."  What remain are paradigmatic disparate impact allegations, including, for example, that the Bylaw has "a discriminatory impact," "a detrimental effect," a "known negative impact," and a "tangible impact" on female athletes.  Therefore, we find no error in the district court's conclusion that FAU based its ineffective accommodation and unequal treatment claims on disparate impact allegations.

Even so, FAU argues that the district court nonetheless erred because its allegations allow for an inference of Appellees' discriminatory intent.  FAU is correct that a defendant's discriminatory intent "can be inferred from the mere fact of differences in treatment," *see E.E.O.C. v. Dial Corp.*, 469 F.3d 735, 741 (8th Cir. 2006), or established by evidence of "deliberate indifference," which the Supreme Court has characterized as "disregard[ing] a strong likelihood that the challenged

action would result in a violation of federally protected rights." *A.J.T. ex rel. A.T. v. Osseo Area Schs.,* 605 U.S. 335, 345 (2025) (citation modified). As such, we accept that a plaintiff could bring a Title IX claim based on allegations of disparate impact that allow an inference of discriminatory intent.

FAU has failed to do so. First, FAU contends that its allegations concerning male competitive advantage in athletics and the negative impacts of Doe's participation in girls' softball permit the inference that Appellees intended to treat female athletes less favorably than similarly situated male athletes. However, as the district court noted, FAU's complaint does not allege that Appellees enforced the Bylaw because of its disparate impact on female athletes. Nor does FAU point to evidence in the record showing that Appellees received and disregarded complaints outlining the negative effects of Doe's participation on female athletes. *See Grandson v. Univ. of Minn.*, 272 F.3d 568, 575 (8th Cir. 2001) (affirming denial of leave to amend deliberate indifference claim in complaint that contained "no allegation of prior notice of their complaints to appropriate [school] officials, no allegation of deliberate indifference by such officials, and no allegation they had afforded [the school] a reasonable opportunity to rectify the alleged violations"). Moreover, FAU supplies no case law or other legal support for the proposition that Appellees' alleged awareness of and failure to prevent a single transgender girl's participation in a team sport speak to an intent to discriminate. Accordingly, we conclude that FAU has not brought a claim of intentional discrimination based on inferences stemming from Doe's participation in girls' softball.

Second, FAU asserts that it has brought intentional discrimination claims based on Appellees' deliberate indifference to the federal government's repeated instruction that male participation in all-female athletics violates Title IX. In FAU's view, the federal government has put Appellees on notice of a "strong likelihood that [the Bylaw] would result in a violation of federally protected [Title IX] rights" since at least January 2025. *See A.J.T.*, 605 U.S. at 345 (citation modified). As such, FAU contends that its allegation that Appellees have flouted executive guidance and federal agency findings by permitting Doe's participation in girls' softball amounts

- 11 -

to a claim of intentional discrimination.  The problem with this argument is that executive guidance and agency findings, in and of themselves, do not reflect settled law.  As such, they cannot independently establish a likelihood that certain policies or conduct violate federal rights.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (noting that "interpretation of the laws" is "emphatically the province and duty of the judicial department" (citation modified)).  Here, there can be no dispute that whether Title IX requires, permits, or prohibits the participation of transgender athletes in female athletics remains an open question of law.  Until it is resolved by the judicial process, the Executive Branch's views on that question may guide its own enforcement approach, but they cannot independently establish a "strong likelihood" that Doe's participation violates Title IX or its implementing regulations.[7]  Accordingly, we reject FAU's argument that its allegations concerning Appellees' failure to adhere to current federal guidance on the requirements of Title IX constitute claims of deliberate indifference.

Because FAU's allegations sound in disparate impact and do not allow for an inference of discriminatory intent or deliberate indifference, we conclude that its claims of ineffective accommodation and unequal treatment under Title IX are not claims of intentional discrimination.  Therefore, the district court did not err in determining that FAU lacks a private right of action for its Title IX claims.

---

[7]The significant shift in the interpretation of Title IX between the previous and current presidential administrations underscores the point.  Under the previous administration's reading of Title IX, the Appellees had good reason to believe that failing to allow Doe to play girls' softball would have constituted sex discrimination. *See Tennessee v. Cardona*, 762 F.Supp.3d 615, 621 (E.D. Ky. Jan. 9, 2025) (enjoining enforcement of Title IX rule that "[d]iscrimination on the basis of sex includes discrimination on the basis of . . . gender identity").  Therefore, FAU's deliberate indifference theory permits the dubious inference that Appellees would have engaged in intentional discrimination had they adopted FAU's view of Title IX and refused to follow federal guidance during the previous administration.

- 12 -

## III.  Conclusion

Accordingly, we affirm the district court's denial of FAU's motion for a preliminary injunction.[8]

_____

---

[8]Because we affirm the district court's private right of action holding, we take no position on the court's further evaluation of FAU's motion under the *Dataphase* factors.